STATE OF MISSOURI, Respondent, v. BARNEY RUSSELL, Appellant.

**March 17, 1885.**

1. CRIMINAL LAW—LOTTERIES—SUFFICIENCY OF PROOF.—Evidence that the defendant sold a piece of paper containing certain numbers and that immediately after, when arrested, he was engaged in writing corresponding figures in a memorandum book, is not, in the absence of evidence that the paper represented a chance in a lottery, sufficient to support a conviction for selling lottery tickets.

2. JUDICIAL NOTICE.—Courts will not take judicial notice that playing "policy" is playing a game of chance.

3. APPELLATE PRACTICE.—Where the evidence is insufficient to sustain a conviction, in a criminal case which is tried without error, the appellate court will reverse the cause and discharge the accused.

APPEAL from the St. Louis Court of Criminal Correction, NOONAN, J.

*Reversed and the defendant discharged.*

J. W. COLLINS, for the appellant.

J. R. CLAIBORNE, for the respondent.

THOMPSON, J., delivered the opinion of the court.

The defendant was tried on a criminal information for vending a lottery ticket. He was convicted and sentenced to pay a fine of $250.00.

The information charges the offense by stating that the defendant did, on a day named, "wrongfully and unlawfully sell and expose to sale, and caused to be sold and

exposed to sale, and did keep on hand for the purpose of sale, and did then and on said other days and times there assist in the sale and exposure to sale of certain lottery tickets, and a certain share and shares in certain lottery tickets in a certain lottery device in the nature of a lottery, known as the Horse Race Lottery, at and for a certain price and charge, to wit: ten cents each, in which, and whereby certain property of great value, to wit: five dollars, was therein and thereby to be disposed of by lot and chance."

The following was all the evidence in the case:

"John Dent testified as follows: I know the defendant, Barney Russell. I was at his office on Seventh and Morgan streets, in the city of St. Louis, state of Missouri, on the 8th of October, 1884. I went there to play policy and the defendant gave me a piece of paper with three numbers on it. I paid fifteen cents for it. I told Russell that I wanted to make a play. I wrote the numbers on the paper myself, and the numbers I wrote are 14, 32, 69. Russell put on the class number 17 himself on the paper. The defendant had two books in his office and put the numbers in on one of them. I bought the ticket at ten o'clock and was to get returns from drawings at five o'clock. Witness is here shown a paper with the numbers 14, 32, 69 and 17 on it, and he said that is the ticket I got of defendant. I did not know of any horse race or horses of these numbers. This happened in the city of St. Louis, state of Missouri. My ticket did not win anything.

"On cross examination, said witness, John Dent, testified as follows: I only told defendant I wanted to make a play, and he did not make any statement to me except that I would get returns at five o'clock. I don't know whether the paper introduced in evidence with the numbers on it is a lottery ticket, a policy ticket, or a ticket on a horse race. The defendant did not tell me what it was; he did not tell me whether it was a horse race, a policy, or a lottery ticket. I don't know whether it is a ticket on a horse race or not. I don't know what the

ticket was on.   Badger and Flynn gave me money to buy
tickets with.

"George W. Badger, being sworn on the part of
the state, testified as follows: I am a police officer and
arrested the defendant at Seventh and Morgan streets,
in this city, about half-past five o'clock.   When I ar-
rested him he was writing in this book.   (Here witness
produced the book.)   I find the numbers 17, 14, 32, 69
and 5, in the book, which numbers correspond with the
numbers on the ticket in witness John Dent's hands."

It is too obvious for extended discussion that this evi-
dence entirely fails to make out any of the constitutive
facts laid in the information.   It does not tend to show
that the defendant wrongfully and unlawfully caused to
be sold or exposed for sale, or kept on hand for the pur-
pose of sale, or assisted in selling or exposing to sale, any
lottery ticket or tickets, or any share in any lottery
ticket or tickets, or in any device in the nature of
a lottery known as the Horse Race Lottery, or by any
other name.   It does not show that the piece of paper
which the witness Dent bought of the defendant was
a lottery ticket.   It does not show that it did not rep-
resent a bet on a horse race, which is not a criminal
offense in this state.   The mere statement that the wit-
ness went to the defendant's place "to play policy," has
no tendency to show that he purchased of the defendant
a lottery ticket while there, because he did not state that
he played policy while there; nor was there any evidence
showing, or tending to show, what playing policy is, or
whether playing policy is playing at a game of chance, or
whether there is any gambling game called policy.   We
take judicial notice of the ordinary meaning of the words
of the English language; but we do not take judicial
notice of the slang used among gamblers.   I have read
in the newspapers of playing policy, but I am glad to say
that I do not know what the expression means, and have
no knowledge which enables me to conclude whether or
not it is playing at a game of chance.   The court could
not know judicially the meaning of the expression, and

therefore it was necessary to prove its meaning to the jury. There was no evidence of this kind, nor was there any evidence whatever tending to show that the paper which the witness purchased of the defendant was a device employed in a game of chance whereby, for the sum of ten cents, or any other sum, "certain property of great value, to wit: $5.00," or of any other value, "was therein and thereby to be disposed of by lot and chance." Indeed there is not a particle of evidence of any scheme, understanding, or arrangement whereby the witness, in purchasing the piece of paper, purchased the chance of obtaining any money or any property.

The instructions on which the case was put to the jury would seem to have been well enough, if there had been any applicatory evidence which warranted the giving of them; but as there was no such evidence we are not to be understood as expressing any definite opinion concerning them.

The state took the risk of submitting the cause to the jury upon insufficient evidence. The defendant has been in jeopardy and cannot again be put on trial for this offense. It is therefore ordered that the judgment of the court of criminal correction be reversed and the defendant discharged. All the judges concur.