STATE OF MISSOURI, Respondent, *v.* H. BRUNER, Appellant.

April 7, 1885.

1. CRIMINAL LAW — LOTTERIES — SUFFICIENCY OF PROOF.—In order to sustain a conviction for selling lottery tickets there must be proof that the paper sold represented a share in a game of chance.

2. —— JUDICIAL NOTICE.—Appellate courts will not take judicial notice that the words "drawing" and "Kentucky drawing" designate a game of chance.

3. APPELLATE PRACTICE.—The evidence being insufficient to sustain a conviction, and the case having been fully tried, the accused will be discharged, on appeal.

APPEAL from the St. Louis Court of Criminal Correction, NOONAN, J.

*Reversed and the defendant discharged.*

ROWE & MORRIS, for the appellant.

J. R. CLAIBORNE, for the respondent.

LEWIS, P. J., delivered the opinion of the court.

The defendant was prosecuted upon an information for selling lottery tickets, in violation of Revised Statutes, section 1567. The testimony introduced to convict him was substantially as follows :·

Charles Patterson, a witness, called on the defendant at 417 Walnut street, where was a bird store appearing to be kept by E. Kaub. There was a back room partitioned off from the front. "I went in there and went back to the little room and said, 'I want to make a play.' He handed me a piece of white envelope and I wrote three numbers on it, handed it in and he copied it on a little book and handed it back. Afterwards he said, 'How do you want to play 2's and 3's? or how much?' I don't remember the exact words. I says, '2's and 3's for a quarter,' and handed him a silver dollar, and he gave me back seventy-five cents in change. Then I asked him, after I had made the play, was it the 'East St. Louis drawing?' and he said 'No, the Kentucky drawing.'"

The witness further said that he went back afterwards to get a drawing, but the numbers were not in the drawings. "Q. Then you lost? A. Yes, sir. Q. Did you see the numbers that drew? A. I saw the drawing." In cross-examination, he explained, that what he meant by the "drawings" were some figures on a paper, and that the defendant did not tell him what they were. The remainder of the testimony was directed chiefly to an identification of the paper first mentioned, and of the figures written on it.

This is substantially the same sort of testimony that was given for the state in *State* v. *Russell (ante* p. 16), and *State* v. *Sellner (ante* p. 39), decided by this court at the present term. We held in those cases that there was a total failure of proofs to sustain the several charges. The same result must follow here. The only additional

items in the present testimony are those which relate to the "Kentucky drawing," and to the use of the word "drawing" in another connection. But, how could the court or the jury know, without any evidence to that effect, that the Kentucky drawing, if such a thing existed, was a lottery, or anything like one? The words themselves could never, by their inherent force, import as much to any human being. Taking them with the aid of newspaper paragraphs and other hearsay indications, one might well believe himself to be sufficiently informed for conversational purposes, that there is a lottery operated in the state of Kentucky, and that an ordinary reference to "the Kentucky drawing" may be supposed to have it in contemplation. But this is very far from the kind of knowledge which the law exacts in those who are to condemn a citizen to punishment for crime, whether they be judges, jurors, or witnesses. It is hardly necessary to add anything about the unexplained figures on a piece of paper, which the witness called or supposed to be "drawings."

It may be objected that the present disposition of these cases renders it impossible that there can ever be a conviction under the law against lotteries. If there were any foundation for such an objection, it would be none the less imperative that the fundamental laws of evidence must be obeyed by the courts in these, as in all other cases. But the objection has no weight. Words where used in their conventional sense require no proof to show what they mean. But when employed in a technical or in unaccustomed signification differing from the conventional, and so understood by a particular class of persons, in their application to a particular subject matter, this technical or unaccustomed meaning may be proved like any other fact. If the words "play," "policy," "making a play," etc., convey a distinctive meaning when used among persons who deal in ventures which are really lotteries, whether so called or not, surely there are living persons who could testify to the existence and recognition of this technical import, and to the common

understanding among those who thus employ the words.

The meaning thus attached to the words used in a particular transaction, may go so far as to give a criminating character to bits of paper with figures on them, passing between the parties in the same transaction, which otherwise would remain, as they certainly did in the present case, innocent of any taint whatever.

Because there was no evidence in the trial which could, with any reasonable propriety, be considered as tending to convict the defendant of the offense charged against him, the judgment is reversed, and the defendant discharged. All the judges concur.