THE STATE OF MISSOURI, Respondent, v. FRANK WILLIAMS, Appellant.

St. Louis Court of Appeals, March 24, 1891.

1.  **Criminal Law :** BURDEN OF PROOF. In a prosecution for the selling of lottery tickets in a lottery called policy it is incumbent upon the state, in order to warrant a conviction, to introduce some evidence having a tendency to prove that the tickets sold entitled the buyer to a chance to acquire property having some value by lottery, or by a scheme or understanding similar to the lottery.

2. —— : —— : CIRCUMSTANTIAL EVIDENCE. The proof need not be direct and definite, but may be made by circumstances from which an inference of guilt can be lawfully drawn.

*Appeal from St. Louis Court of Criminal Correction.*
HON. R. A. CAMPBELL, Judge.

AFFIRMED.

*Robert W. Goode*, for appellant.

*Bernard Dierkes*, Prosecuting Attorney, for respondent.

BIGGS, J.—The defendant was tried and convicted on an information under section 3833 of the Revised Statutes, 1889, which subjects anyone who sells, or is in anywise concerned in the sale of, a lottery ticket in any lottery, or device in the nature of a lottery, to a fine not exceeding $1,000.

The jury found the defendant guilty, and fixed his punishment at a fine of $5. The complaint now made is that the evidence was insufficient to authorize the conviction.

The substance of the charge in the information is that the defendant unlawfully sold "certain lottery tickets, and a certain share and shares in certain lottery tickets, in a certain lottery and device in the nature of a lottery, known as 'policy,' at and for a certain price and charge, to-wit, ten cents each, in which and whereby certain property of great value, to-wit, $10 was therein and thereby to be disposed of by lot and chance.

The evidence on the part of the state was as follows:

Charles A. Bruner testified as follows: "I am a butcher by occupation; am now in employ of police department. On January 10, 1890, I saw defendant at 2706 Market street, in this city. I bought a ticket from

him for five cents; I wrote down the numbers and he copied them onto a piece of newspaper, similar to the piece I used. He said I would win from forty cents to $8, if I won at all;—went back again the same day and bought another ticket for five cents. The second time he wrote the numbers on a piece of paper and gave them to me. It was a 'policy ticket,' and he told me to come back at 4:30 P. M. to get returns of the drawing. (Two pieces of paper, with three numbers on each, offered by the state in evidence as tickets in a policy drawing; objected to by the defendant; objection overruled by the court, to which action of the court defendant then and there duly excepted.)"

Officer Pat Scully then testified on behalf of the state that he arrested defendant at 2706 Market street, after Bruner had given him two slips of paper which he said he had bought from defendant as policy tickets; that policy was a game of chance, played by drawing from seventy-eight numbers; that he had never seen policy played, and only knew of it from hearing from others.

Officer Tim Danaher then testified on behalf of the state that he went to 2706 Market street, just after Officer Scully, and saw defendant and one Johnson in the defendant's room; that the defendant said he was not doing a regular business, but took down some numbers. This was all the evidence on the part of the state.

It is insisted that under the authority of the cases of *State v. Russell*, 17 Mo. App. 16, and *State v. Sellner*, 17 Mo. App. 39, and *State v. Bruner*, 17 Mo. App. 274, the conviction in this case must be set aside, and the defendant discharged.

In the *Russell case* the conviction was set aside for the reason, that there was no evidence tending to prove that the paper, which the witness had purchased from Russell was a device employed in a game of chance, whereby property was to be disposed of by lot, or chance. The court said: "Indeed, there is not a particle of evidence of any scheme, understanding or

The State v. Williams.

arrangement, whereby' the witness, in purchasing the piece of paper, purchased the chance of obtaining the money or any property."

In the *Sellner case*, the court said : "There is absolutely no evidence, however, showing or tending to show that the ticket thus bought entitled the purchaser to any chance in any property to be disposed of, of the value of $8, or of any value. There is no evidence from which the jury were legally warranted to draw the conclusion, that any drawing or disposition of property by chance was intended."

In the *Bruner case*, this additional testimony was given by the prosecuting witness : "Then I asked him (defendant), after I had made the play, was it the 'East St. Louis drawing' ? And he said, 'No, the Kentucky drawing.' " In passing on the legal effect of this testimony the court said : "But how could the court or the jury know, without any evidence to that effect, that the Kentucky drawing, if such a thing existed, was a lottery, or anything like one ? The words themselves could never, by their inherent force, import as much to any human being. * * * If the words 'play,' 'policy,' 'making a play,' etc., convey a distinctive meaning, when used among persons who deal in ventures which are really lotteries, whether so called or not, surely there are living persons who could testify to the existence and recognition of this technical import, and to the common understanding among those who thus employ the words."

The facts presented by this record are essentially different from those in the foregoing cases. As we have shown, this court held that, in order to warrant a conviction for this offense, it was incumbent on the state to introduce some evidence having a tendency to prove that the ticket purchased entitled the buyer to a chance to acquire property ( having some value ) by lottery or by a scheme or understanding similar to a lottery. It

seems to us that the state's evidence in the present prosecution meets the requirements of those decisions. Bruner testified that the two tickets purchased by him were "policy tickets," and that the defendant told him that he would win either forty cents or $8, if he won anything. Another witness said that policy was a "game of chance played by drawing from seventy-eight numbers."

This evidence is somewhat indefinite, but we think it was sufficient to carry the case to the jury. If in such a case positive and definite proof be exacted, we apprehend that convictions would rarely, if ever, be secured. For that reason this court has held that direct and definite proof of the violation of the statute need not be shown, but such violation may be established by circumstances, from which an inference of guilt may be lawfully drawn. *State v. Hindman*, 4 Mo. App. 582; *State v. Ochsner*, 9 Mo. App. 216.

The judgment of the lower court will be affirmed. All the judges concur.