CITY OF TOLEDO, APPELLEE, v. JOHNSON, APPELLANT.

(No. 3457—Decided June 1, 1938.)

*Mr. Martin S. Dodd,* director of law, and *Mr. Merritt W. Green,* for appellee.

*Mr. Dan McCullough,* for appellant.

OVERMYER, J. The defendant was arrested and tried in Municipal Court on an affidavit charging that "on or about the 2nd day of February, 1938, at the said city and county, one George Johnson did unlawfully engage in a game of chance for money, to wit, number game, contrary to an ordinance" etc.

The defendant was found guilty and fined and on appeal to Common Pleas Court the judgment was affirmed. This appeal is prosecuted to reverse those judgments, and the errors assigned are the refusal of the trial court to grant the application of defendant for a trial by jury; the overruling of defendant's demurrer to the affidavit; overruling of defendant's motion to suppress the evidence; and that the court below erred in not granting defendant's motion for discharge at the close of the city's case.

As to the first ground of error, this court has expressed its views in a written opinion in the case of

*City of Toledo* v. *Bader,* Sixth Appellate District, unreported, and held adversely to defendant's claim. The second claim of error is also disposed of by a decision of this court in *City of Toledo* v. *Harris,* 56 Ohio App., 251, 10 N. E. (2d), 454, adversely to defendant's claims. The overruling of defendant's motion to suppress the evidence was required under. *State* v. *Lindway,* 131. Ohio St., 166, 2 N. E. (2d), 490.

As to the last ground of error assigned, *viz.,* that the court erred in not discharging defendant, we find it based on the charge in the affidavit that the defendant "did unlawfully engage in a game of chance for money (to wit) number game," and the claim that there is not a word of evidence in the record defining or describing a "number game" or a showing by any evidence whatever that it is a game of chance.

The affidavit was filed under Section 964 of the Toledo Code, which reads as follows:

"Section 964. Engaging in Game of Chance. It shall be unlawful for any person within the limits of this city, to play at, or to be engaged in, any game of chance whatever, for any money, property, or other valuable thing; and every person so offending, on conviction thereof, shall be fined in any sum not exceeding fifty dollars, and the costs of prosecution."

No definitions are given in that section as to what shall constitute a "game of chance."

In the Ohio General Code, Chapter 14, under Part Fourth, Penal, on the subject of "Gambling," are named and prohibited a great many "games of chance" and "gaming devices." The words "gambling," "game for wager," "game for money," "wager on result of an election," "wagers or sells pools" upon "trial or contest of skill, speed or power of endurance of man or beast," "lottery," "policy," "scheme of chance," "common gambler," "gambling device," "corners the market," "bucket shops," and

"margin," appear in the statutes of that chapter and are either there defined or are of such general known meaning that a court may take judicial knowledge thereof. Nowhere in the statute or in the sections of the ordinances of the Toledo Code in evidence does there appear the word "number" or "numbers" game, nor any definition or description thereof, nor do the dictionaries make any reference to "number" or "numbers game" played with numbers or number slips, nor does there appear in the record before us a word of testimony showing what the meaning of "number game" is, nor that it is a game of chance, though the officer who made the arrest was on the stand and was examined by the city. The lower courts took judicial notice of the "number game" and that it is a game of chance.

The evidence is that the defendant did not live in the house where the arrest was made but was trailed there by the officers and that he produced certain "number slips" from a hiding place. No description of any kind is given of the "slips" nor the purposes for which they are used nor that they have any connection with gambling.

There being no such "game of chance" recognized in the statutes of Ohio or in the Toledo ordinances as a "number game," it is necessary that there be proof that a "number game" is a "game or scheme of chance or gambling," for this court can not take judicial notice of such fact.

The prosecution herein was laid under an ordinance which does not define what shall constitute a game of chance, and the affidavit merely alleged the defendant engaged "in a game of chance for money, to wit, a number game." No proof whatever was offered to show what a "number game" is or that a number game "is a game of chance" for money, and we are

not aware that the courts of Ohio have waived the requirements of criminal law and procedure—whether it is in a gambling prosecution or for burglary, forgery or murder—that the essential elements of the crime charged must be proven. The attack here made is not upon the sufficiency of the affidavit to charge an offense but upon the taking of judicial notice by the lower courts of the guilt of defendant of the essential elements of the offense charged, in lieu of proof thereof.

The efforts of the executive branch of government to stamp out crime, including gambling, should have general support, and the legislative branch has progressively revised the laws to dispense with technicalities which in the past have hampered both the executive branch and the judicial branch in the administration of both civil and criminal law, but we have not reached that point where it is unnecessary to prove in a criminal case that a man has committed a crime in order to convict him of it, as against a plea of "not guilty."

We cite a few of many respectable authorities in support of the conclusion we reach. In 16 Corpus Juris, 517, Section 962, the text, after pointing out certain matters of which courts may take judicial knowledge, states, "but judicial knowledge of such matters is not asserted in doubtful cases," and then gives some illustrations as follows:

"It may be that the game of 'fan tan' is known by persons familiar with gambling games, and it may be that it is one of the games fairly within the prohibited games enumerated in the Hunt law; but if all this is true, *we* certainly do not know it, and, without evidence of what it really is, we cannot be expected to judicially know that it is a prohibited game. * * * the proper way to ascertain the facts concerning the methods of playing the game, and the object thereof, is on the trial where witnesses may testify to such

facts. Thus alone can it be shown whether it is a lawful gambling game or a prohibited one." *State* v. *Gray,* 19 Mont., 206, 208, 47 P., 900.

"We do not judicially know how 'keno' is played, and therefore we do not know whether it is a game there prohibited." *In re Murphy,* 128 Cal., 29, 30, 60 P., 465.

" 'Kentucky Drawing,' without explanation, is not judicially known to be 'a lottery or anything like one.' " *State* v. *Bruner,* 17 Mo. App., 274, 276.

A witness in a criminal trial said he went to defendant's place "to play policy," and the St. Louis Court of Appeals of Missouri in its opinion said: "I have read in the newspapers of playing policy, but I am glad to say that I do not know what the expression means," and held it must be proven. *State* v. *Russell,* 17 Mo. App., 16. See to the same effect, *State* v. *Sellner,* 17 Mo. App., 39.

In Ohio "policy" and "lottery," "bucket-shops" and "margins" appear in the statutes, along with many other definite names as being gambling games, and are either defined or have been held to have such general state-wide and universal meaning as to warrant judicial notice without proof, but the word "number" or "number game" nowhere appears except in the affidavit and record before us.

In this case we must hold, to sustain the legal processes of criminal procedure, that there is no evidence to sustain the conviction and the judgment must be and is reversed, the defendant ordered discharged and the cause remanded for execution.

*Judgment reversed and cause remanded.*

CARPENTER, J., concurs.

LLOYD, J., concurring. I concur in the judgment simply upon the admitted fact that there is no evidence in the record to sustain the alleged commission by Johnson of the offense of engaging in a game of chance as charged in the affidavit.