# THE STATE v. CRONIN, Appellant.

## Division Two, June 20, 1905.

1. **POLICY: Indictment.** An indictment which charges that defendant "unlawfully and feloniously did aid and assist in making and establishing a 'policy' as a business and avocation," is sufficient. Since the statute specifically defines the offense, the indictment properly follows the form of the statute, and it is unnecessary that it define a "policy" or allege in what manner it was made or established.

2. ————: **Sufficiency of Evidence.** The evidence, in a prosecution for making and establishing a "policy," showed the continuous presence of defendant at the "policy" establishment; that he was admitted at all times behind the partition, through a window of which the money was paid out, and was seen handling the money and opening the envelopes brought in by various "policy" vendors; that he handed out the drawings and made corrections in case of error; that he took a chair at the money table and examined the books in the room behind the partition, through which the vendors turned in their books and money; that he was thus engaged as often as three times a day for a period of five months; that the room in which the business was conducted had a front door, but that this was kept closed and an alley entrance used instead. *Held*, sufficient to justify a verdict of guilty.

3. **INSTRUCTION: "Feloniously:" Failure to Define.** Where an instruction points out the facts which constitute the felony, it is unnecessary that it employ the term "feloniously," and, therefore, a failure to define the term is not error.

4. **VERDICT: General and Special: Presumption.** Where, in a criminal case, the verdict is a general one, it will be presumed that all the issues were considered by the jury, and the insufficiency of the verdict must be reached by motion in arrest. But where the jury by its verdict fails to find a material and essential element of the crime, the defect may be taken advantage of on appeal without a motion in arrest in the lower court.

5. ————: **Insufficient: Policy.** In a prosecution for making and establishing a "policy" it is essential to the conviction of defendant that he conducted it as "a business and avocation." And a verdict and judgment are insufficient which find "that

defendant was guilty of aiding and assisting in making and establishing a 'policy,'" without finding that it was done "as a business and avocation," since they fail to respond to an essential element of the crime charged in the indictment.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel G. Taylor,* Judge.

REVERSED AND REMANDED.

*Morton Jourdan* for appellant.

(1) The indictment is insufficient and does not advise the defendant of the character of the accusation against him. It is indefinite and uncertain, and fails to define in what manner a "policy" was made or established, and fails to define what is meant by a "policy." (2) The testimony is clearly insufficient to support the verdict or conviction. It is indefinite, uncertain, vague, and will not satisfy the court's mind that the defendant is guilty of the offense charged in the indictment, or guilty of any other offense. (3) The verdict and judgment are insufficient in law. The defendant was charged with having aided and assisted in establishing a lottery "as a business and avocation." This allegation and the proof thereof was necessary. State v. Pomeroy, 130 Mo. 497. The jury did not find him guilty of aiding and assisting in establishing a lottery as a business and avocation. Neither was he adjudged guilty thereof. The verdict and judgment found and adjudged him guilty of no violation of any offense under the statute. State v. DeWitt, 186 Mo. 61.

*Herbert S. Hadley,* Attorney-General, and *N. T. Gentry,* Assistant Attorney-General, for the State.

(1) The indictment is good; it sufficiently describes the offense in the language of the statute, and defendant was fully informed what charge he had to

meet. It has often been held that, where the indictment follows the language of the statute, it is sufficient. State v. West, 157 Mo. 309; State v. Hendrickson, 165 Mo. 262; Bishop's New Crim. Proc., secs. 319, 322. (2) The evidence was not only sufficient to submit the case to the jury, but it was overwhelmingly against the defendant. State v. Smith, 80 Mo. 519; State v. Andrews, 43 Mo. 470. (3) Appellant's contention that the instruction should have submitted to the jury the question of defendant's felonious intent, is without merit. State v. Scott, 109 Mo. 232; State v. Tobie, 141 Mo. 547; State v. Walker, 98 Mo. 107. (4) There is no merit in appellant's contention that the verdict is insufficient. The jury found the defendant guilty of what the statute denounces, and that is sufficient. Besides, there was no motion in arrest of judgment filed; and, if defendant ever had cause to complain, he has waived it. R. S. 1899, sec. 2690. "Where the finding is merely defective or imperfect, the judgment will not be reversed unless a motion has been made in the inferior court to arrest the judgment, and overruled." Finney v. State, 9 Mo. 628; Erdbruegger v. Meier, 14 Mo. App. 258; Dividson v. Samuel, 6 Mo. 38; Wells v. Adams, 88 Mo. App. 228; Johnson v. Bedford, 90 Mo. App. 47; Dobyns v. Rice, 22 Mo. App. 457; Parsons v. Randolph, 21 Mo. App. 362; Davis v. People, 50 Ill. 199.

GANTT, J.—At the February term, 1903, the grand jury of the city of St. Louis preferred an indictment against the defendant, the second count of which is in the following words:

"And the grand jurors aforesaid, upon their oath aforesaid, do further present and say that Frank Cronin and Louis Miller, late of the city aforesaid, on the fifteenth day of February, one thousand nine hundred and three, and at the city of St. Louis aforesaid, and State aforesaid, unlawfully and feloniously did aid and assist in making and establishing a 'policy' as a bus-

iness and avocation in the State of Missouri, against the peace and dignity of the State."

A severance was granted to the defendant Cronin, and at the February term, 1904, he was put upon his trial, convicted and found guilty of aiding and assisting in making and establishing a "policy," and his punishment assessed at six months in the city jail. After an unsuccessful motion for new trial he took his appeal to this court.

The indictment is predicated upon section 2219, Revised Statutes 1899, which provides:

"If any person shall make or establish, or aid or assist in making or establishing, any lottery, gift enterprise, policy or scheme or drawing in the nature of a lottery as a business or avocation in this State, . . upon conviction shall be punished by imprisonment in the penitentiary for not less than two nor more than five years, or by imprisonment in the county jail or workhouse for not less than six nor more than twelve months."

The State's evidence tended to show that all three of the witnesses, Winterer, Linnebar and Tarrant, with others, were policy vendors, and each one went by a number; Winterer was twenty-three, Linnebar was twenty-two and Tarrant was twenty-eight. It was their custom for some months to sell and dispose of tickets, each one of which was numbered, and the number of the ticket was placed on the vendor's book. At certain hours of each day, the book was closed and the vendor turned the same into the headquarters, which was an establishment on South Tenth street in St. Louis, called "The Henry Book." Some of the witnesses visited this place twice a day, at noon and at five p. m. Others visited there at noon, at five p. m. and at nine p. m. As stated by the witness Tarrant, they went there to turn in their books and money. All the money, received by these policy vendors for tickets sold by them, was turned into this place, except a commis-

sion of twenty-five per cent which was allowed them. All who visited this place went by way of the alley entrance; and, although there was a front door, there was no evidence that anyone could or ever did come in at the front door. This alley entrance opened into a room, which had shelves and benches all around, each vendor had his seat, and his number was on the wall near his seat. There was a partition across this room, and a door and a small window in the partition. This door was opened occasionally, at which time a person would come out from behind and make out the drawing. None of the vendors ever passed behind the sacred portals of this partition, but the defendant Frank Cronin and his codefendant Louis Miller were often seen behind there, especially at the hours of twelve, five and nine, when the business was conducted through the window. One witness, who was a frequenter of this place, said that he never saw any one behind this partition except the defendant and Miller. By looking through the window in this partition, the witness could see some chairs behind the partition, and also a table that had some money on it. Each vendor made it convenient to arrive at this interesting place five or ten minutes before the hours above mentioned. After entering the room at the stated times, each vendor would sit on his bench, take out his book and deposit in a pigeon hole, and it was then laid on the table. In about ten minutes they would get to drawing and each vendor would take his book and see if he had made a "hit." The drawings were given out two or three at a time, and were wrapped up in a piece of tissue paper about twelve inches long. Each paper was numbered, and by examining the numbers on his book, the vendor could see if he had made a "hit." The person possessing the lucky number (or "hit") would make out a "hit" slip and throw it in at the window; and the money would be paid to him in an envelope-which was passed out to him through the window from behind the partition.   A   three-number

play was called a "gig," and two numbers were called
a "saddle." While the money was usually handed out
by Miller, yet on one occasion when the witness Win-
terer had made a hit and some money was paid to him
in the above manner, on counting it, he found that the
full amount had not been paid, so defendant Cronin
handed him the balance due. At that time, defendant
was sitting back of the partition by the side of the table.
At another time, defendant Cronin came out from be-
hind the inner office and gave out the drawings, while
the vendors were sitting down; or, as expressed by wit-
ness, he "just walked around and distributed them."
At another time, this witness testified, the slips were
given out by defendant and a man named Dutch Fred.
Witness Linnebar said that the drawing was sometimes
handed to him by defendant, sometimes by other par-
ties; and that he had seen defendant standing up be-
hind the partition waiting for the drawings to be
handed back to him. One witness testified that he saw
defendant at this place sometimes once a day, some-
times twice a day, and sometimes three times a day;
and that the defendant was opening envelopes of the
vendors and seeing that the money was right. This
witness further testified that he saw defendant as often
as three times a day sitting in a chair behind the par-
tition, examining the sheets (or books) and handling
the money. The supplies and advertising matter used
by the vendor were given to them in this room by a ne-
gro who was frequently seen there and who went by
the name of "Sunny Mack." The evidence shows that
this defendant and his associates conducted this sort of
business at this place for five months. Finally the po-
lice made a raid, and vendors, policies, books, hits, gigs
and saddles were taken before the grand jury, and this
and other indictments were the result. Several grounds
are assigned in this court for the reversal of the judg-
ment of conviction and they will be considered in the
order of the brief of counsel for the defendant.

I. The indictment is assailed as insufficient in that it fails to define in what manner a "policy" was made or established, and fails to define what is meant by a "policy." This objection was made and answered in State v. Wilkerson, 170 Mo. l. c. 191, 192, in which Bur-gess, J., speaking for this court, said: "Now what is it at which the statute is leveled? Clearly the unlawful and felonious making and establishing a policy as a business and avocation, and these facts are set forth in the indictment. The statute specifically defines the offense in such a way that it cannot be misunderstood, nor can there be any question as to the kind of policy intended, for when the statute says 'make and establish a policy' it is well understood to be 'a form of gambling in which bets are made on numbers to be drawn by lottery.' [Century Dictionary.]" The indictment in that case was in all essentials like the one before us, and adhering to the views there expressed, we hold the indictment is sufficient. The statute itself sufficiently individuates the offense, and in such case it is well-established law of this State that an indictment following the form of the statute is sufficient.

II. It is next urged that the evidence is insufficient to support the conviction. The evidence tended to prove a continuous presence of the defendant at this "policy" establishment, that the defendant and his co-indictee, Miller, were not only there, but they were admitted at all times behind the partition and in the innermost office, and the defendant was seen handling the money and opening the envelopes brought in by the various "policy" vendors. Not only this, but he himself handed out the drawings, made the corrections, in case of error. He took a chair at the money table and examined the books in the room behind the partition into which the vendors turned their books and money through a small window in the partition. It appeared, also, that the defendant was thus engaged as often as three times a day for a period of five months in a room

which had a front door but which all parties preferred to keep closed and use the alley entrance. This evidence was practically uncontradicted. There was ample evidence on which to base the verdict, and we discover nothing which smacks of recklessness, prejudice or bias on the part of the jury, and this conclusion disposes of the next ground of error, to-wit, that the court erred in refusing to direct an acquittal. There is no evidence which would have justified the court in submitting to the jury that the defendant was performing merely a clerical duty, or that he was simply engaged in the sale of tickets.

III. Instruction number one given by the court is criticised for the failure to use the word "feloniously" therein.

This court in a number of cases has held that this word is entirely unnecessary when the instruction points out, as this instruction does, the facts which constitute the felony. In State v. Scott, 109 Mo. l. c. 232, it was said: "So, in the instruction complained of here, the word 'feloniously' scarcely has a definable meaning, as used, and could have been altogether omitted without affecting, in the least, the correctness and sufficiency of the instruction." [See, also, State v. Tobie, 141 Mo. 547.] The instruction required the jury to find the facts charged in the indictment, and the indictment follows the law, and when these facts are found the conviction of a felony follows as a legal conclusion.

IV. Finally, the verdict is assailed as insufficient. In consideration of this assignment it should be noted that the defendant expressly waived his motion in arrest of judgment, and nowhere assails in his motion for new trial the form of the verdict. Counsel for the defendant relies upon State v. DeWitt, 186 Mo. 61. In that case it was said:

"Whatever the practice may be in other States, it is the settled law of Missouri that if a verdict, which is

a part of the record, is not responsive to the issue, or is so uncertain and indefinite that it will not support the judgment, this defect may be reached by a motion in arrest of judgment. [Webber v. State, 10 Mo. 8; Davidson v. Peck, 4 Mo. 438; Griffin v. Samuel, 6 Mo. 50.]'' In State v. DeWitt, supra, the verdict which was held insufficient was duly assailed by a motion in arrest of judgment specifically calling attention of the trial court to the insufficiency of the verdict.

In Finney v. State, 9 Mo. 633, which was an action on an administrator's bond executed by O'Neil and McGowan, the jury by their verdict found that neither McGowan nor O'Neil, after the death of McGowan, did pay over the money, but omitted saying anything in relation to the non-payment after the death of O'Neil by his representatives. The defective finding was assigned as error in this court. Judge Scott, speaking for the court, said:

''In accordance with the previous decisions of this court, the defective finding of the jury could only be taken advantage of by motion in arrest. Where a material issue is entirely overlooked by the jury, and the finding is not a general one, the want of such finding is a material issue, may be taken advantage of on a writ of error, though no motion in arrest be made in the inferior court. [Jones v. Snedecor, 3 Mo. 390; Pratt v. Rogers, 5 Mo. 53.] But when the finding is a general one, it will raise a presumption that all the issues have been duly considered by the jury. [Stout v. Calver, 6 Mo. 256.] And where the finding is merely defective or imperfect, the judgment will not be reversed, unless a motion has been made in the inferior court to arrest the judgment, and overruled. In the present case there was but one breach before the jury, and their verdict upon that breach did not embrace all the matters which they should have found to authorize their conclusion in favor of the plaintiff; but inasmuch as the attention of the circuit court was not directed to the defect, where it

would have been readily corrected, no advantage can be taken of it here.'' This statement of the law by Judge Scott we think announces the correct rule, and it follows that in each case the sufficiency of the verdict must be determined by the consideration whether the issue to which the jury fails to respond is a material one and the finding is not a general one. If it be a material and essential element of the crime in a criminal case, the defect may be taken advantage of on a writ of error or appeal, though no motion in arrest be made in the inferior court, because the verdict is a part of the record proper. That the aiding or assisting in the establishment of a ''policy'' must be ''as a business and avocation'' under the statute is perfectly apparent. The indictment so charged and the court so instructed the jury, but the jury in this case, instead of making a general finding of guilty which would have been entirely sufficient, made a special finding, to-wit, ''that the defendant was guilty of aiding and assisting in making and establishing a 'policy,' '' and did not find that he did this ''as a business and avocation,'' and the judgment is as defective as the verdict, and neither respond to this essential element of the crime charged in the indictment. The authorities collated in State v. De-Witt established beyond question that this defect in the verdict is a most material one, and this being true, it may be taken advantage of on writ of error or appeal in this court, though no motion in arrest be made in the inferior court. We think there is no escape from this conclusion. It was absolutely essential to a conviction of the defendant that he should not only have aided and assisted in the establishing of a ''policy,'' but that he must have done it ''as a business and avocation,'' and yet the jury have not so found. They could have found all that they did, and yet refused to find the essential fact, that the defendant was doing this ''as a business and avocation.'' The finding is a special one, and we are compelled to hold the verdict is insufficient. We

again repeat that in every case of a verdict rendered, the judge, or prosecuting officer, or both, should look after its form and substance so as to prevent an insufficient finding from passing into the record of the court. In this case doubtless had a general form of the verdict been furnished the jury they would have returned a general verdict of guilty, or guilty as charged in the indictment, and it would have been entirely sufficient, but as it is, the verdict is a special one omitting an essential requirement of the statute, and the judgment of the court is as defective as the verdict. The result is, the judgment must be reversed and the cause remanded for a new trial.

*Fox, J.,* concurs; *Burgess, P. J.,* not having heard the argument, takes no part in the decision.