## THE STATE v. LOUIS MILLER, Appellant.

### Division Two, October 14, 1905.

1. **LOTTERY: Indictment.** Where the statute sufficiently individuates the offense, the indictment properly follows the language of the statute. And an indictment is sufficient which charges that defendant "did knowingly, willfully and feloniously aid and assist in making and establishing as a business and avocation . . . a certain lottery." It is not necessary to charge that it was unlawfully done, the word "feloniously" including the charge of unlawfulness.

2. ——: **Instruction: Evidence.** Where the evidence was that defendant devoted his time to the lottery business, that he employed agents to work up the business, distributed winning lists and paid prizes, it was sufficient to show that he was aiding and assisting in establishing a lottery. And an instruction which substantially so declares is not improper.

3. ——: ——: **Submitting Admitted Fact.** Where defendant admits that he sold lottery tickets, and himself asks an instruction to the effect that, if he only bought the tickets and sold them on his account, he could not be convicted, an instruction was not improper which assumed that he sold them.

4. ——: ——: **Satisfaction of Guilt.** An instruction which requires the presumption of defendant's innocence to be overcome by evidence which establishes his guilt to the satisfaction of the jury, is sufficient, without adding the word "reasonable" before the word "satisfaction."

Vol 190 mo—29

5. ———: ———: **Witness's Feeling Towards Defendant.** An instruction on the credibility of witnesses, which tells the jury to take into consideration the witness's "relation to or feeling towards the defendant," is well enough, since these words necessarily embrace the witness's friendliness or unfriendliness towards the defendant.

6. ———: ———: **Conjunction.** An instruction which says that defendant was "a competent witness in his own behalf, *but* the fact that he was a witness," etc., is not obnoxious to criticism, although the use of the conjunction "and" instead of "but" would have been proper.

7. ———: **Defendant's Connection With: Evidence.** Where it was shown that certain tickets, sheets and lists of lottery drawings introduced in evidence were of the character of those received from defendant, his connection with those matters was sufficiently established to authorize their introduction in evidence.

8. ———: **Verdict: Business and Avocation.** Where the indictment charged defendant with aiding and assisting in making and establishing a lottery "as a business and avocation," a verdict which finds him "guilty as charged in the indictment," is sufficient.

9. ———: **Defendant as Witness: Cross-Examination.** The statute restricting defendant's cross-examination to matters referred to in his examination in chief does not limit the cross-examination to a mere categorical review of the matters stated by him, but he may be cross-examined as to the matters to which he "refers." And where a defendant, in his examination in chief, is asked if he was ever in the employ of a certain lottery company or was authorized by it to transact any business on its account, and he answers negatively, a cross-examination which was confined to matters connected with the manipulation of lottery tickets, and going directly to show that defendant bore a position of trust with reference to the lottery company, was not a violation of the statute.

Appeal from St. Louis City Circuit Court.—*Hon. Jesse A. McDonald,* Judge.

AFFIRMED.

*Morton Jourdan* for appellant.

Section 2637, Revised Statutes 1899, provides, among other things, that no person on trial shall be required to testify; that any such person may at his option

testify in his own behalf, and "shall be liable to cross-examination as to any matter referred to in his examination in chief and may be contradicted and impeached as any other witness in the case." If ever a record filed in this court presents a flagrant violation of that statute, it is the case at bar. State v. Turner, 166 Mo. 350; State v. Hathorn, 166 Mo. 229; State v. Kyle, 177 Mo. 659; State v. Patterson, 88 Mo. 91; State v. Chamberlain, 89 Mo. 133; State v. Fullerton, 90 Mo. App. 411; State v. Hudspeth, 150 Mo. 31; State v. Brooks, 92 Mo. 612; State v. Porter, 75 Mo. 171; State v. Douglas, 81 Mo. 231; State v. McGraw, 74 Mo. 573.

*Herbert S. Hadley,* Attorney-General, and *Frank Blake,* Assistant Attorney-General, for the State.

"It is always proper to test the truth of the matters stated in the direct examination. Of course, under our statute, it must be confined to the subject of the examination in chief, but it is still cross-examination that is permitted, by the statute itself. Cross-examination is not confined to a mere categorical review of the matters stated in the direct examination." State v. Miller, 156 Mo. 86; State v. Cunningham, 154 Mo. 174; State v. McKenzie, 102 Mo. 632.

GANTT, J.—This is an appeal from a judgment of the circuit court in the city of St. Louis. The defendant was indicted, along with John P. Collins and S. J. Tennant, on May 29, 1903, for aiding and assisting in making and establishing as a business and avocation, in the city of St. Louis, a certain lottery and scheme of drawing in the nature of a lottery, known as the Mexican Lottery. There were three counts in the indictment, but the prosecuting attorney dismissed as to the first and third and elected to proceed on the second which is in the following words:

"And the grand jurors aforesaid, upon their oath

aforesaid, do further present that the said John P. Collins, Louis T. Miller and S. J. Tennant, on or about the fifth day of May, in the year one thousand nine hundred and three, at the city of St. Louis aforesaid and State aforesaid, did knowingly, willfully and feloniously aid and assist in making and establishing as a business and avocation in the city and State aforesaid, a certain lottery and scheme of drawing, in the nature of a lottery, known as the Mexican Lottery, whereby a large sum of money, to-wit, sixty thousand dollars, was thereafter to be disposed of by lot and chance, the particular method by which said disposition of said sum of money was to be made is to the jurors aforesaid unknown; contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State.''

The defendant was duly arraigned, a severance granted, and on the 18th day of March, 1904, the defendant Miller was tried and convicted on said second count, and his punishment assessed at six months in the city jail. A motion for new trial was duly entered, heard and overruled, and an appeal allowed to this court.

The testimony in the case was substantially as follows: Herman Richter, on behalf of the State, testified: On May 5, 1903, was engaged in business of selling lottery tickets; know the defendant Miller, who has a place of business at 411 Walnut street in St. Louis, Missouri; I reported daily to defendant Miller, who started me out on the first day I went to work for him, with some Mexican Lottery tickets, saying: ''See what you can do with them as to establishing trade. Go out and put tickets in places and see if they could sell them, and give them a percentage.'' Tickets were of different prices, 25 cents, 50 cents, $1.00, $2.00 and $4.00. I took the tickets to different parts of the city wherever we had customers to sell the tickets for us; to barber shops,

saloons and tobacco stores, where they sold on a percentage, the person selling getting 15 per cent on the dollar for all sales. I received $45 per month, and Mr. Miller, the defendant, always paid me my salary at 411 Walnut street, twice each month. I had a particular route in North St. Louis, and sometimes I would dispose of $2,000 worth of tickets in one month. Any tickets I had left over I would take back to the office, and the money for the tickets sold would be handed to Mr. Miller, the defendant, or the clerk, Wm. Sheehy. If any man would win a prize we would advertise it on a little slip of paper and distribute it among the people so as to advertise the company. When a drawing was had, we would get a telegram showing the capital prize, and after that a list of the smaller prizes. In taking the tickets around to the customers, if a man had a winning ticket, I would cash it for him, and then I would turn the cancelled ticket in as cash when I made my report to the office. I would see the defendant in that place nearly every day. It is a little cigar store in front and there is a little room in the back where the tickets are kept. Defendant's name was on the window of this establishment at 411 Walnut street. I got my day's supply of tickets either from defendant or Mr. Sheehy. Defendant employed others in the same work I was engaged in; saw them around his place getting their tickets and being paid off. The capital prize of the Mexican Lottery is $60,000, and I think there were 80,000 tickets; I heard the drawing was taking place in Mexico." On cross-examination, witness stated he had known, by common report, of the Mexican Lottery for ten or twelve years; that it was an establishment chartered by the Republic of Mexico as a government institution. Never saw a drawing of the Mexican Lottery; do not know whether they had any drawings or not; only what I heard and what is stated on the tickets. The defendant got his printed matter, tickets, etc., from a man by the name of

Buchroeder. The connection that defendant had with this concern was to sell tickets, the same as I did. On redirect examination witness identified a sheet, dated May 28, 1903, showing list of winning numbers similar to the sheets distributed by the defendant. Witness stated he had been convicted of frequenting bawdy-houses some four or five months previous.

Arthur Buchroeder testified on behalf of the State substantially as follows: My father is a jeweler and has a place of business at 507 Walnut street. I know the defendant and his place at 411 Walnut street. There was an office of the Mexican Lottery at 507 Walnut street. I am connected with the Mexican Lottery in the capacity of clerk. I do not know what connection the defendant had with the Mexican Lottery Company. I have had financial settlements with him, of business transactions concerning the Mexican Lottery Company. Defendant came up to get some lottery tickets; came to my place. I presume the tickets came to me by express; I do not know. They were sent to various places by the company, I presume, and they would be sent to my place by wagon. Once a month I would get a consignment of tickets, from ten to eighteen thousand. Then they would be distributed; some to the defendant, who paid for them, and some at other places. If he would not sell them he would bring them back to me. Defendant would pay the prizes as suited his convenience and deduct that amount from his settlement. I handled five or six thousand prize sheets a month, but do not know where they came from; but never distributed any of them. I went by the name of "B. Hume & Company," a fictitious name. When checks got into my hands for goods purchased by defendant, they were signed J. P. Collins, Trustee. I would sell anywhere from two or three to six or seven thousand tickets per month to defendant. I was informed each month of the winning numbers of the lottery from the City of Mexico, direct,

by telegram, sent by the president of the company, whose name is Bassetti. I had charge of the receiving and distributing of tickets for the entire city. I sold the tickets to a number of people besides the defendant outside of the city.

Max Reichenbach testified on behalf of the State substantially as follows: I am clerk in special tax department in city hall. I worked for defendant prior to May, 1903, for a period of six months. I received $50 per month; the defendant paid me; I reported to his establishment twice a day. I got lottery tickets from the defendant to sell and place among agents. The names were sometimes given me in the office, names of saloons and barber shops, and I would place them there to be sold, on commission. The money I collected I took to the office and gave to the defendant, or his clerk. Witness identified a list of the Mexican Lottery with which the tickets would be compared to determine the winning tickets. The winning tickets that I did not pay were paid at the office, sometimes by the defendant. The lists were given out at the office at 411 Walnut street and then distributed around to the agents. The defendant employed me and paid me my salary. When he employed me he just told me to go out and get agents for tickets. Tickets not sold were taken back at the office by the defendant or his clerk. I quit the employ of the defendant about the time the grand jury were investigating the lotteries. Have seen other employees make settlements with defendant.

W. H. Rothchild testified on behalf of the State substanially as follows: I know the defendant; bought Mexican Lottery tickets from him, in packages, and would sell them to different persons. If I did not sell them I would return them to the defendant. I would get my money back if I paid any prizes. The winnings were to be determined by a sheet. This sheet (dated

May 28, 1903) I got down at the defendant's cigar store.

Edward Berg for the State testified substantially as follows: Worked for the defendant about a year and a half ago in the lottery business. If I placed over a thousand dollars worth of tickets a month, I got ten per cent. I distributed tickets to the regular customers; when I would pay a winning ticket I would cash it at defendant's office. The defendant employed me and paid me; the tickets not sold were returned. I distributed the list showing winnings to the agencies.

A list dated May 28, 1903, showing winning numbers taken from the establishment of the defendant, was introduced in evidence.

An instruction in the nature of a demurrer to the evidence was then asked by the defendant, which was by the court refused. This was the evidence on the part of the State.

Louis T. Miller, defendant, testified on his own behalf substantially as follows: I was never in the employ of the Mexican Lottery Company; I was never authorized by the company to transact any business on its account. On cross-examination, defendant, over objection of his counsel, stated that he paid some of the prize tickets, and some of the tickets were paid by Mr. Tarrant. I allowed my employees for money advanced on tickets paid by them. When a ticket was brought in that had been paid, I gave it to Mr. Tarrant, who represented the company in St. Louis. When I paid a ticket he redeemed it for me. The tickets I bought and did not sell I gave to Mr. Tarrant, and he returned me the money for them. I paid cash for the tickets bought from Mr. Tarrant, and he redeemed the balance not sold. I paid Richter, Reichenbach and Berg their salaries. I had dealings with the Buchroeders, not with Mr. Tennant. I am the proprietor of the place at 411 Walnut street. I never gave Reichenbach, Berg or Richter any

tickets. The money I received for lottery tickets I sent to the bank; I turned it over to Buchroeder or Tennant. I turned the money over to buy new tickets, less profits, which I kept.

At the conclusion of the evidence the court gave the following instructions:

"1. If you believe and find from the evidence and under these instructions beyond a reasonable doubt that at the city of St. Louis and State of Missouri, at any time within three years next before the 29th day of May, 1903, the defendant, Louis T. Miller, willfully and unlawfully did aid and assist in making and establishing as a business and avocation in the city of St. Louis and State of Missouri a lottery or scheme of drawing in the nature of a lottery, and that the same was known as the Mexican Lottery, and whereby any money of any amount and value whatever might be acquired of said lottery by lot or chance, you will find the defendant guilty as charged in the second count of the indictment, and unless you so find the facts you will acquit the defendant. If you find the defendant guilty you will assess his punishment in the penitentiary for a term of not less than two years nor more than five years, or at imprisonment in the city jail or workhouse for not less than six months nor more than twelve months.

"2. You are instructed further that the mere fact that the defendant sold lottery tickets is not of itself sufficient to prove the charge made in the indictment herein unless you further find from the evidence that within three years next before the filing of the indictment the defendant aided and assisted in making and establishing a lottery or scheme of drawing in the nature of a lottery as a business and avocation in the city of St. Louis and State of Missouri.

"3. You are instructed that the testimony of an accomplice in a crime, that is, a person who actually commits or assists or participates in the crime, is ad-

missble in evidence, yet the evidence of an accomplice in a crime when not corroborated by some person or persons not implicated in the crime as to matters material to the issues, that is, matters connecting the defendant with the commission of the crime charged against him, ought to be received with great caution by you before you convict the defendant on such testimony.

"4. You are further instructed that the indictment contains the formal statement of the charge, but is not to be taken as any evidence of defendant's guilt. The law presumes the defendant to be innocent, and this presumption continues until it has been overcome by evidence which establishes his guilt to your satisfaction and beyond a reasonable doubt. And the burden of proving his guilt rests with the State. If, however, this presumption has been overcome by the evidence and the guilt of the defendant established to a moral certainty and beyond a reasonable doubt, your duty is to convict. If, upon consideration of all the evidence, you have a reasonable doubt of the defendant's guilt, you should acquit; but a doubt, to authorize an acquittal on that ground, ought to be a substantial doubt touching the defendant's guilt, and not a mere possibility of his innocence. You are further instructed that you are the sole judges of the credibility of the witnesses and of the weight to be given to their testimony. In determining such credibility and weight you will take into consideration the character of the witness, his manner on the stand, his interest, if any, in the result of the trial, his relation to or feeling towards the defendant, and the probability or improbability of his statements, as well as all the facts and circumstances given in evidence. In this connection you are further instructed that if you believe that any witness has knowingly sworn falsely to any material fact, you are at liberty to reject all or any portion of such witness's testimony.

The defendant is a competent witness in his own behalf, but the fact that he is a witness testifying in his own behalf, and the interest he has at stake in the case, may be considered by you in determining the credibility of his testimony.''

To all of which the defendant's counsel at the time duly objected and excepted. Thereupon, the defendant prayed the court to give the following instructions:

''The court instructs the jury that the purchase and sale of lottery tickets is a misdemeanor under the laws of this State, and if you believe and find from the evidence that defendant did nothing except to buy and sell lottery tickets, then it will be your duty to find the defendant not guilty upon this indictment, which charges defendant with the commission of a felony.

''The court instructs the jury that if they believe and find from the evidence that defendant was never employed by or given authority to act for the Mexican Lottery and never acted in connection with the business of said lottery except to buy from it its tickets and sell the same on his own account, then it will be your duty to find the defendant not guilty.'' Which instructions the court refused, and the defendant excepted.

The jury returned the following verdict: ''We, the jury in the above-entitled cause, find the defendant guilty of aiding and assisting in establishing a lottery. as charged in the second count of the indictment, and assess his punishment at six months in the city jail.''

I. The second count in the indictment upon which the defendant was tried and convicted is assailed by the defendant as vague, indefinite and uncertain, in that it does not charge in what manner or how the defendant aided and assisted in maintaining and establishing the lottery, nor what the lottery was, and that it does not charge the act to have been unlawfully done. The indictment is predicated upon section 2219, Revised Statutes 1899, which makes it ''a felony to aid or assist in

making or establishing any lottery, gift enterprise, policy or scheme of drawing in the nature of a lottery as a business or avocation in this State.'' The indictment is sufficient; the statute sufficiently individuates the offense and the indictment follows the language of the statute. [State v. Wilkerson, 170 Mo. 184; State v. West, 157 Mo. 309; State v. Cronin, 189 Mo. 663.] The offense is made by the statute a felony, and the defendant is charged to have knowingly, willfully and feloniously aided and assisted in making and establishing as a business and avocation in the city a lottery. It was entirely unnecessary to charge in addition to these that it was unlawfully done. The word ''feloniously'' included the charge of unlawfulness.

II. The first instruction is attacked upon the ground that there was not sufficient evidence upon which to base it, as is also the second. The statute upon which this instruction is based was before the court in State v. Pomeroy, 130 Mo. 489, and it was there held that in a prosecution for making or establishing a lottery as a business or avocation in this State it was not necessary to show that the drawings were to occur in this State. The evidence in this case is as strong, if not stronger, than that offered in Pomeroy's case, and we think amply sufficient to show that the defendant was aiding and assisting in making and establishing the business of a lottery in this State in a most important particular. He devoted his time to the business, employed agents to make a business, distributed winning lists and paid prizes, and, as said by this court in State v. Wilkerson, 170 Mo. 184, ''We know of no more effective way to assist in making and establishing a business as an avocation than to participate in it, and to devote one's time and service in so doing.'' Without repeating the evidence which appears in the statement, we think there was ample evidence to justify the verdict of the jury. The objection to the second instruction, that it assumes

that the defendant sold lottery tickets without submitting that fact to the jury, we think is without merit. The defendant submitted an instruction himself to the effect that if he only bought tickets and sold them on his own account, he could not be convicted, and he testified himself that he did sell tickets, obviously with the view to reduce his offense from a felony to a mere misdemeanor. It appears that his counsel on different occasions during the progress of the trial stated that the offense of which the defendant was guilty was selling tickets. An instruction is not erroneous which assumes as true the fact which is admitted on the trial. [State v. Holloway, 156 Mo. 222; State v. Edwards, 71 Mo. 312.] As to the criticism of the instructions that they do not use the word "feloniously," we have answered that contention in State v. Cronin, 189 Mo. 663. [See also, State v. Scott, 109 Mo. 232; State v. Garth, 164 Mo. 553; State v. Tobie, 141 Mo. 547.]

III. The objection to the fourth instruction is that the word "reasonable" before the word "satisfaction" therein should have been added. The instruction is correct without the addition of that word, and has uniformly received the sanction and approval of this court. Objection is also made to this instruction because in that portion referring to the credibility of witnesses it includes simply the relation to or feeling towards the defendant. The instruction is set out in full in the accompanying statement, and we think is not obnoxious to the criticism made upon it in this respect; the words, "his relation to or feeling towards the defendant," necessarily contemplate whether the witness was friendly or unfriendly to the defendant. The instruction was well enough as it was written. A further objection to this instruction is that in speaking of the competency of the defendant, the court told the jury, "he was a competent witness in his own behalf, *but* the fact that he was a witness testifying in his own behalf

might be considered by the jury.'' Complaint is made to the use of the conjunction ''but'' instead of ''and'' which it is conceded would have been proper. We are unable to concur in this criticism of the evidence of the defendant testifying in his own behalf. This identical formula was approved in State v. Zorn, 71 Mo. 415, and we think the distinction sought to be made is entirely too nice to be of practical benefit to the defendant on trial.

IV. There is some objection made to the introduction of the evidence on the ground that certain tickets and sheets and lists of drawings were not sufficiently connected with the defendant, but the examination of the record shows that the tickets were of the character of those received from the defendant, and that the sheets which had been distributed to the various agents were counterparts of one exhibited at the defendant's place of business at 411 Walnut street, and that the list of lottery drawing which was introduced in evidence was obtained at the cigar store of the defendant. We think there is no question but that the defendant's connection with these matters was sufficiently shown to authorize their introduction in evidence.

V. Objection is made to the form of the verdict as insufficient, in that the words ''as a business and avocation'' are omitted therefrom, but it will be observed that the jury found the defendant guilty of aiding and assisting in making and establishing a lottery *as charged in the second count of the indictment*; in that count it was charged that he did it *as a business and avocation,* and for that reason this verdict is distinguishable from that in State v. DeWitt, 186 Mo. 61, and State v. Cronin, supra, and in accordance with State v. McGee, 188 Mo. l. c. 411, is sufficient.

VI. The final contention of the defendant is that he was subjected to an illegal cross-examination, and

that he was examined concerning matters about which he had not been examined in chief. The defendant, when on the stand testifying in his own behalf, was asked by his counsel, "Were you ever in the employ of the Mexican Lottery Company?" and he answered "No, sir." He was then asked, "Were you ever authorized by the company to transact any business on its account?" and he answered "No, sir." The substance of his cross-examination and answers is set out in the statement accompanying this opinion. From the questions and answers on cross-examination it will be observed that it was confined to matters connected with the manipulation of Mexican Lottery tickets and going directly to show that defendant in fact bore a position of trust with reference to that institution. When the statute says, "A defendant may be cross-examined *as to any matter referred to in his examination in chief* and may be contradicted and impeached as any other witness in the case," it does not mean that a defendant can take the stand and in answer to one or two well-prepared interrogatories sweep away the whole structure of the State's case and then remain immune from a cross-examination on the issue thus tendered. Cross-examination from time immemorial has been the great test of the credibility of any witness. The defendant under our laws need not become a witness, and when he does he enjoys an advantage over the ordinary witness in that his cross-examination must be confined to the matter with reference to which he testifies, but as to the matter to which he "refers" in his testimony in chief he is subject to cross-examination and impeachment just as any other witness. If defendant desired to shield himself behind the statute granting him protection from cross-examination as to any matter not referred to in his testimony, he should not have opened the door to his connection with the Mexican Lottery scheme. The questions put to him involved practically

the whole issue tendered by the indictment, and he can not be heard to complain that the State proceeded to cross-examine him on these matters. Thus, in People v. Mullings, 83 Cal. 138, approved by this court in State v. Avery, 113 Mo. l. c. 500, a defendant asked, "Did you or did you not kill John Moore?" and he answered "No." It was held that owing to the general nature of defendant's statement, a wide range of cross-examination should be allowed. Cross-examination as used in the statute does not mean a mere categorical review of the matters stated by defendant. We think the court did not err in permitting the cross-examination of which defendant complains. It did not transcend the limits of the matters referred to by him in his examination in chief, to-wit, his connection with the Mexican Lottery scheme. [State v. Avery, 113 Mo. 475; State v. Miller, 156 Mo. 86; State v. Cunningham, 154 Mo. 174; State v. McKenzie, 102 Mo. 632.] Upon the whole case we find no reversible error, and the judgment is affirmed.

*Burgess, P. J.,* and *Fox, J.,* concur.