# THE STATE v. WILLIAM WILKERSON, Appellant.

### Division Two, November 18, 1902.

1. **Policy:** INDICTMENT: WORDS OF STATUTE. An indictment for aiding and assisting in making and establishing a policy as a business and avocation, if set forth in the language of the statute, sufficiently individuates the crime. The statute says that "if any person shall aid or assist in making or establishing any lottery, policy, or scheme or drawing in the nature of a lottery as a business or avocation," he shall be punished, and by "making and establishing a policy" is well understood to be meant "a form of gambling in which bets are made on numbers to be drawn by lottery," and the word "policy" is well understood to mean a particular kind of game played in a particular kind of way.

2. ————: EVIDENCE. The evidence showed that defendant and his co-indictees were arrested at a roadhouse near the State line, in which was found at the time a policy wheel and all other paraphernalia for policy-drawing. That one of defendant's co-indictees remarked to the officer in his presence, "You were a little early, you broke up a good game," and defendant then said, "I was out here, I was writing policy, I was out here with my book." That a person who sells tickets or writes policy is in the performance of that which is a necessary part of the game, and defendant testified that when out of work he sold policy tickets. He also stated to others that he went to the roadhouse to play policy, that he was there every day for two weeks at 12 and 5 o'clock, and that these were the times of the drawings. *Held*, that these facts and circumstances tended to show that defendant was guilty of assisting in making and establishing a policy as a business and avocation, and sufficient to sustain a verdict finding him guilty of that crime.

3. ————: ————: WHAT IS ASSISTANCE? There is no more effective way to assist in making and establishing a business as an avocation than to participate in it.

Appeal from Jackson Criminal Court.—*Hon. Jno. W. Wofford*, Judge.

AFFIRMED.

State v. Wilkerson.

*Noyes & Heath* for appellant.

(1)   The indictment in this case does not describe the offense and is insufficient.   Pike v. Commonwealth, 63 Ky. 89; State v. Elbridge, 7 Eng. (Ark.) 608; U. S. v. Cruikshank, 92 U. S. 542; State v. Terry, 109 Mo. 617.   (2) The words, ''scheme of drawing in the nature of the lottery,'' are descriptive of policy and should be contained in the indictment.   State v. South, 136 Mo. 677; State v. Schuchmann, 133 Mo. 116; State v. Burk, 151 Mo. 144; State v. Kaub, 90 Mo. 198.   (3) Defendant's instruction number 1 should have been given.   State v. Moxley, 102 Mo. 390.   (4)   The evidence of what Anderson said was error.   State v. Howard, 102 Mo. 142.   (5)   Defendant's instruction number 6 should have been given.   State v. Harmon, 60 Mo. App. 48; State v. Norman, 44 Mo. App. 306; State v. Kaub, 15 Mo. App. 439, 90 Mo. 198; State v. Pomeroy, 130 Mo. 496.   (6)   There is no evidence to show that the defendant had anything to do with the making and establishing of a policy, and defendant should have been discharged.

*Herbert S. Hadley* and *Charles E. Burnham* for the State.

The indictment in this case is good and sufficient. It is in the language of the statute.   The term ''policy'' has a special and specific meaning in our language. Policy:   A form of gambling in which bets are made on numbers to be drawn by lottery.—Century Dictionary.   Policy shop: A place for gambling by betting on the drawing of certain numbers in a lottery.—Century Dictionary.   Policy slip:  The ticket given on a stake of money, or a policy slip.—Century Dictionary. The term ''policy'' having a special and particular meaning, sufficiently individuated the offense.   Where the statute in defining an offense employs terms which have a fixed legal signification, an indictment following the language of the statute, without more, will be good. State v. Davis, 70 Mo. 467; State v. Hayward, 83 Mo.

304. The term "policy" means one thing and only one—the drawing of seventy-eight numbers from a wheel, etc. The Supreme Court, as early as the first report, held an indictment good that charged defendant with suffering a gambling device to be set up, etc., at which a game of chance, called Loto, was played. Lowry v. State, 1 Mo. 724. Would it be contended that the term "lottery" should be described in an indictment under the same section? And yet policy has a much more specific meaning than lottery. Or would it be necessary to describe A, B, C, farobank, E. O., roulette, equality or keno in drawing an indictment under section 2194, Revised Statutes 1899? It has never been so held, and yet the game of policy is known to thousands where either of the above games is known to one. The phrase "scheme of drawing in the nature of a lottery" used in section 2219 is not descriptive of policy, but is the enumeration of another offense, separate and distinct from policy. For that reason the disjunctive "or" is used. State v. Kaub, 90 Mo. 198.

BURGESS, J.—Defendant was convicted, and his punishment fixed at two years' imprisonment in the penitentiary, under an indictment charging that he, with three others, did "unlawfully and feloniously aid and assist in making and establishing a policy as a business and avocation." The punishment was reduced by the court of its own motion to six months imprisonment in the county jail.

After unsuccessful motions for new trial and in arrest defendant appeals.

The indictment, so far as necessary to quote it reads as follows: "That James Steele, Seth P. Anderson, Jno. Martin and William Wilkerson, late of the county aforesaid, on the 31st day of July, 1900, at the county of Jackson, State of Missouri, unlawfully and feloniously did make and establish a policy as a business and avocation in the State of Missouri, against the peace and dignity of the State, and the grand jurors aforesaid do further present and say that James Steele,

Seth P. Anderson, John Martin and William Wilkerson, late of the county aforesaid, on the 31st day of July, 1900, at the county of Jackson and State of Missouri, unlawfully and feloniously did aid and assist in making and establishing a policy as a business and avocation in the State of Missouri, against the peace and dignity of the State, and the grand jurors aforesaid upon their oath aforesaid do further say and present that James Steele, Seth P. Anderson, Jno. Martin and William Wilkerson, late of the county of Jackson aforesaid, on the 31st day of July, 1900, at the county of Jackson and State of Missouri, unlawfully and feloniously, did make and establish a scheme of drawing, in the nature of a lottery, called 'policy,' as a business and avocation, against the peace and dignity of the State.''

The facts are that the defendant, with two of his co-indictees, was arrested in a roadhouse on the Southwest boulevard near the state line, in Kansas City, Missouri. The remaining co-indictee was there present in the building at the time, but was not arrested until afterwards. A policy wheel, the numbers for the drawing, the blackboard, and all other paraphernalia for policy drawing was found in the same building.

In the forenoon of July 31, 1900, the marshal of Jackson county, acting on information that there was a policy-drawing being conducted in the building where the arrests were made, started with two of his deputies to raid the place. On the car going out they saw two of the defendants—Wilkerson and Steele; these men alighted from the car some distance from the roadhouse and entered the basement of the building from the rear; the officers coming immediately behind found the door barred. Gaining entrance by another door they found that the two men and Anderson, a co-defendant, had gone up stairs into a room occupied by a sick servant, and pretended when arrested that they were attending to the sick man. On going down to the basement room, by which defendant and his companion had entered, the officers found a counter-blackboard and

a "case" (a case for holding a glass policy wheel). When the officers asked, "Where is the wheel," Anderson in the presence of defendant says, "You are a little early, the game hadn't started." In the cellar, immediately next to this room where the "case" was found, and communicating with it, the policy wheel was discovered, and fresh footprints in the mud leading to it. In another corner they found the policy numbers, 78, and Anderson said in defendant's presence at the finding of the case and wheel, "You were a little early, you broke up a good game." Defendant then told the officers that he was running a policy, that, "I was out here, I was writing policy. I was out there with my books," and had been there every day for two weeks—twice a day, morning and evening drawings.

The evidence further showed that defendant had been engaged selling policy at intervals for five years before that.

Defendant himself testified that when out of work he sold policy tickets, and volunteered the information without being asked that he was the party who was convicted for selling or exposing to sale certain policy tickets, referring to the record of former convictions previously shown by the State.

It was further shown that a person who sells tickets or writes policy is a necessary part of the game; that his duties are entirely different from the service of one selling lottery tickets. A lottery ticket is made printed and complete, and a sale of it consists of a delivery simply of the ticket. While one selling policy necessarily writes the tickets himself, keeps duplicate copies thereof in what is called "a book," which is two sheets of manifold paper—one he must deliver at the place of the drawing before it takes place, the other he keeps to pay winning tickets (if any) by. He secures the winning numbers or reports and is then prepared to and does pay the winning tickets, having first sold them and collected the money for them.

He is a necessary part, a condition precedent, subsequent and *in praesenti* of the drawing.

The defendant admitted that he was "writing policy tickets" but claimed that that did not bring him within the purpose of the statute, as it did not constitute "aiding and assisting in making and establishing a policy as a business or avocation."

The court instructed the jury as follows:

"The court instructs the jury that if they find and believe from the evidence that at the county of Jackson and State of Missouri, at any time within three years next before the 27th day of October, 1900, the defendant. William Wilkerson, did either alone or acting in concert with another or others, unlawfully and feloniously aid and assist in making out and establishing a policy as a business and avocation in the State of Missouri, you will find the defendant guilty as charged in the second count in the indictment and assess his punishment at imprisonment in the State penitentiary at not less than two nor more than five years, or by imprisonment in the county jail not less than six months nor more than twelve months.

"Felonious, as used in these instructions, means wickedly and against the admonition of the law, unlawfully.

"If verbal statements of the defendant have been proven in this case, you may take them into consideration, with all the other facts and circumstances proven. What the proof may show you, if anything, that the defendant has said against himself, the law presumes to be true, because against himself; but anything you may believe from the evidence the defendant said in his own behalf, you are not obliged to believe, but you may treat the same as true or false, just as you believe it true or false, when considered with a view to all the other facts and circumstances in the case."

The defendant asked the following instructions, which were refused, and he duly excepted:

"1.   The jury are instructed that if verbal admissions are claimed to have been made by the defendant in the course of casual conversation, the jury should consider them with caution, because of the liability of

the witness to forget what was said or to imperfectly remember it or to misconstrue the statement of the speaker.

"2. The court instructs the jury that in order for you to find the defendant guilty, the State must have proven beyond a reasonable doubt that there was a policy game established in the State of Missouri and that the defendant aided or assisted in the establishment of the same.

"3. The court instructs the jury that if the defendant did only those things that were and are customary and necessary for the sale of lottery or policy tickets or the advertisement of sale of policy tickets or the advertisement of the numbers drawn, then you must find him not guilty.

"4. The court instructs the jury that the defendant is not charged with selling lottery tickets or policy tickets, and if you believe from the evidence that the defendant was selling lottery or policy tickets only, he is not an operator under the law and you must find him not guilty.

"5. The court instructs the jury that in order for you to find the defendant guilty, the State must have proven beyond a reasonable doubt, that the defendant did establish or aid in establishing policy as a business in the State of Missouri.

"6. The court instructs the jury that if the defendant was merely a seller of tickets of policy he is not guilty as charged, and if you believe from the evidence that he only sold the tickets, then you must find him not guilty."

The indictment is challenged upon the ground that it does not individuate the offense, and for that reason it has been set forth.

That portion of the section of the statute (sec. 2219, R. S. 1899) upon which the indictment is based is as follows: "If any person shall make or establish, or aid or assist in making or establishing, any lottery, gift enterprise, policy or scheme of drawing in the nature of a lottery as a business or avocation in this

State . . . upon conviction, he shall be punished by im-
prisonment in the penitentiary for not less than two
nor more than five years, or by imprisonment in the
county jail or workhouse for not less than six nor more
than twelve months.''

When all the facts which constitute the offense are
set forth in the statute, an indictment which follows
its language will be held valid.   [State v. Kesslering,
12 Mo. 565; State v. Davis, 70 Mo. 467; State v. Krue-
ger, 134 Mo. 262; State v. Hayward, 83 Mo. 304.]

In State v. Hayward, supra, SHERWOOD, J., said:
''SHAW, C. J., in Tully v. Commonwealth, 4 Met. 358,
observes:   'When the statute punishes an offense by its
legal designation, without enumerating the acts which
constitute it, then it is necessary to use the terms which
technically charge the offense named at common law.
But we think this is not necessary when the statute
describes the whole offense and the indictment charges
the crime in the words of the statute.'   Mr. WHARTON,
treating of this subject, says:   'On the general princi-
ples of common-law pleading, it may be said that it is
sufficient to frame the indictment in the words of the
statute, in all cases where the statute so far individuates
the offense that the offender has proper notice, from
the mere adoption of the statutory terms, what the of-
fense he is to be tried for really is.   But in no other
case is it sufficient to follow the words of the statute.
It is no more allowable under a statutory charge to put
the defendant on trial without specification of the of-
fense than it would be under a common-law charge.
[Whart. Cr. Pl. and Prac., sec. 220; to the same effect
see Heard on Crim. Pl., 161, 162, 163, 165, 166; Stener
v. State, 17 Reporter 670; State v. Gardener, 28 Mo.
90; State v. Rochforde, 52 Mo. 199; United States v.
Carll, 105 U. S. 611; United States v. Cruikshank, 92
U. S. 542; 1 Arch. Cr. Pr. and Pl., 88; 2 Hawk. P. C.
Ch., 25, sec. 111.]''

Now what is it at which the statute is leveled?
Clearly the unlawful and felonious making and es-
tablishing a policy as a business and avocation, and

these facts are set forth in the indictment. The statute specifically defines the offense in such a way that it can not be misunderstood, nor can there be any question as to the kind of policy intended, for when the statute says "make and establish a policy" it is well understood to be "a form of gambling in which bets are made on numbers to be drawn by lottery." [(U. S.) Century Dictionary.]

The evidence showed that defendant and two of his co-indictees were arrested in a roadhouse in Kansas City, Missouri, in which was found at the time a policy wheel, and all other paraphernalia for policy-drawing. Anderson, one of the persons included in the indictment, remarked to the officers in the presence and hearing of defendant, "You were a little early, you broke up a good game." Defendant then said to the officers, "I was out here, I was writing policy, I was out here with my book."

Defendant himself testified that when out of work he sold policy tickets, and the evidence showed that a person who sells tickets or writes policy is in the performance of that which is a necessary part of the game. The evidence also showed that the term "policy" is well understood as meaning a particular kind of game played in a particular kind of way, and brings the indictment clearly within the rule announced by this court in the case of State v. Terry, 109 Mo. 621, wherein it was said:

"Where an indictment charges that certain property, describing it, or that a certain sum of money, stating the amount, was obtained, etc., by means of 'confidence game,' and that term by long and common usage is well understood as meaning a particular kind of game played in a particular kind of way, this would possibly be sufficient where the facts in evidence would warrant the use of such a term, and this was so decided in Morton v. People, 47 Ill. 468."

The conviction on this indictment could always be pleaded in bar to a second prosecution for the same offense.

Under the charge in the indictment the defendant could have been at no loss to know what offense it was with which he was charged even if there had been no evidence tending to show his guilt, and, therefore, he could not have encountered any difficulty in preparing his defense. The indictment follows the words of the statute, and is well enough.

The only other point worthy of consideration is that there was no evidence to sustain the conviction, but to this contention we are unable to agree. In addition to the facts and circumstance in evidence already adverted to, tending to establish defendant's guilt, it was shown that he stated to one Mr. Chiles, a witness for the State, when asked by him what he was doing out there, that he said he went out there to play policy. Then Chiles asked him why he went out there at twelve o'clock, he asked him where he was at twelve o'clock the day before; defendant said he was there; then he asked him where he was the day before that at twelve o'clock, he said he was there, and that he was there for two weeks before at twelve, and five o'clock, and admitted that he was there every day, and that these were the times of the drawings, twelve and five. That the facts and circumstances adduced tended to show that defendant was guilty of assisting in making and establishing a policy as a business and avocation, is too clear for argument. Its weight was for the consideration of the jury. We know of no more effective way to assist in making and establishing a business as an avocation than to participate in it, and devote one's time and services in so doing.

Finding no reversible error in the record, we affirm the judgment. All of this Division concur.