State v. Hilton.

---

THE STATE v. EDWARD A. HILTON, Appellant.

Division Two, March 12, 1913.

1. **POLICY: Information: In Language of the Statute.** An information charging that defendant unlawfully and feloniously "did aid and assist in making and establishing a 'policy' as a business and avocation" sufficiently apprised defendant of the nature and cause of accusation against him. It is in the language of the statute, and that makes it sufficient.

2. ————: ————: ————: **Constitutional Statute.** Nor is said statute unconstitutional as permitting defendant to be prosecuted without being apprised of the nature and cause of accusation against him. The word "policy" as used in the statute has a well understood meaning as a method of gambling by betting on numbers used in a lottery; and though the statute simply declares that it shall be a felony to aid or assist in the making or establishing of a policy as a business or avocation, an information in the language of the statute sufficiently informs defendant of the nature and cause of the accusation.

3. **TESTIMONY: Of Facts Subsequent to Offense Charged: Motion to Strike Out.** A motion to strike out the entire testimony of a witness who has testified to kindred offenses committed by defendant both before and after the date charged in the information, should be overruled. The motion should include only the testimony as to the acts subsequent to that date; especially where the trial court, before the motion was made, had ruled that the testimony as to the subsequent acts be

stricken out, and directed that the proof be limited to acts before that date.

4. ————: In Rebuttal. Testimony in rebuttal, offered to contradict testimony introduced by defendant, though it relate largely to immaterial matters, is not prejudicial error.

5. POLICY: Instruction: Definition. The use of the words "scheme of lottery" or "scheme of drawing in the nature of a lottery," as a definition of "policy," does not render the instruction bad—especially where the evidence discloses that "policy" was a scheme of lottery, as well as a scheme of drawing in the nature of a lottery.

6. ————: ————: Circumstantial Evidence. The making and establishing of a "policy" may be established by circumstantial evidence alone, and the court may so instruct.

7. REMARKS OF CIRCUIT ATTORNEY: Prevalence of Crime. Where the prevalence of a crime is shown and there is other ample evidence of defendant's guilt, an appeal by the circuit attorney to the jury for a conviction on account of such prevalence is not unauthorized.

Appeal from St. Louis City Circuit Court.—*Hon. George C. Hitchcock*, Judge.

AFFIRMED.

*Willis H. Clark* for appellant.

(1) The second count of the information did not sufficiently individuate the offense so as to apprise appellant of the nature and cause of the accusation or afford a basis for a plea of *res adjudicata.* Constitution of Missouri, art. 2, sec. 22; 22 Cyc. 340; State v. Wilkerson, 170 Mo. 189; State v. Cronin, 189 Mo. 663; State v. Crooker, 95 Mo. 389; State v. Rocheford, 52 Mo. 199; State v. Terry, 109 Mo. 601; State v. Stowe, 132 Mo. 199; State v. Pickett, 174 Mo. 663; State v. Wade, 147 Mo. 73; State v. Krueger, 134 Mo. 262; State v. Keating, 202 Mo. 197; State v. Burke, 151 Mo. 136; State v. Murphy, 141 Mo. 267. (2) The testimony of the witness Frank Brown should have been excluded and the motion of appellant to strike it out and direct the jury to disregard it should have been granted. State v. Spray, 174 Mo. 569; State

v. Parker, 96 Mo. 382; State v. Reed, 85 Mo. 194; State v. Turner, 76 Mo. 350; State v. Reavis, 71 Mo. 419; State v. Jackson, 95 Mo. 623; State v. Wilkerson, 170 Mo. 189; State v. Cronin, 189 Mo. 663; State v. Pruitt, 202 Mo. 49; State v. Bateman, 198 Mo. 212; State v. Minor, 193 Mo. 597; State v. Todd, 194 Mo. 377; State v. Spivey, 191 Mo. 87.   (3)   The testimony of officer Wells in rebuttal was upon immaterial and irrelevant subjects and it was not competent for any purpose.   State v. Walsh, 203 Mo. 605; State v. Kelleher, 201 Mo. 614; State v. Foley, 144 Mo. 600; State v. Forshee, 199 Mo. 142; State v. Myers, 198 Mo. 225; State v. Grant, 144 Mo. 56.   (4)   The portions of the closing argument to the jury of prosecutor Griffin objected to by appellant were improper and unfair and not based upon the admitted evidence and contained an intimation to the jury that evidence against appellant existed other than that produced.   State v. James, 216 Mo. 394; State v. Spivey, 191 Mo. 87; State v. Woodward, 191 Mo. 617; State v. Kennedy, 177 Mo. 98; State v. Shipley, 174 Mo. 512; State v. Hudspeth, 159 Mo. 178; State v. Ferguson, 152 Mo. 92.   (5)   The statute upon which this prosecution is founded is unconstitutional and void.   R. S. 1909, sec. 4770; Const. of Mo., art. 21, secs. 4, 10, 22, 30, 31, 53, art. 4, sec. 53; U. S. Const., Amend. 14, sec. 1; State v. Walsh, 136 Mo. 400; State v. Julow, 129 Mo. 163; State ex rel. v. Herrmann, 76 Mo. 340.   (6)   The first instruction is broader than the charge contained in the second count of the information, upon which the conviction is based, is misleading and confusing, is erroneous in its application to the law and the facts, and constitutes a comment upon the evidence and an argument to the jury.

*Elliott W. Major*, Attorney-General, and *Alex. Z. Patterson*, Assistant Attorney-General, for the State.

(1)   Indictments, of which this information is a rescript, have been approved in State v. Wilkerson.

170 Mo. 190; State v. Cronin, 189 Mo. 669, and State
v. Miller, 190 Mo. l. c. 459. The power of the State
to prohibit lotteries and the various transactions con-
nected with them, in the interest of public morals, is a
recognized branch of the police power; and statutes
directed to that end are universally recognized as con-
stitutional. 25 Cyc. 1641. Legislative enactments pro-
hibiting the sale of tickets in any scheme in the nature
of a lottery are expressly authorized by the Missouri
Constitution, art. 15, sec. 10. (2) The first portion of
instruction 1, which is simply introductory, is cor-
rect. State v. Williams, 136 Mo. 293. Subdivision
one is a correct statement of the law applicable to
joint offenders. Subdivisions two and three on es-
sential elements of the offense necessary to be proved,
are proper and designate the material allegations of
the information which the State must prove. That
part of subdivision three in relation to circumstantial
evidence has been approved. State v. Turner, 106 Mo.
272. (3) Frank Brown was called as a witness for
the State, but he was a most unwilling witness. The
court ruled that his testimony as to matters subse-
quent to May 19th be stricken out. Then, on recross-
examination and redirect examination witness gave
contradictory testimony as to whether the matters tes-
tified to by him in chief were before or after May 19th.
But the record shows that the witness stated that he
had received plays for appellant and turned the money
over to appellant and that these dealings occurred
prior to May 19th and within two or three years of
the trial. This evidence was competent and the court
committed no error in refusing to strike out all the
testimony of Brown. (4) It has been held that this
court will not review the discretion of the trial judge
to control the argument of counsel, unless such dis-
cretion has been clearly abused, and the rights of the
accused were actually prejudiced. State v. Hamilton,
55 Mo. 520. Courts are loath to reverse judgments

on account of improper remarks of attorneys—especially as in this case, where the proof of guilt is clear. In such cases, the verdict of guilty would likely have been returned, regardless of the improper remarks. State v. Hess, 240 Mo. 147; State v. Dietz, 235 Mo. 332; State v. Harvey, 214 Mo. 403; State v. Church, 199 Mo. 605; State v. Hibler, 149 Mo. 478; State v. Summar, 143 Mo. 220; State v. Dusenberry, 112 Mo. 277; R. S. 1909, sec. 5115.

WALKER, J.—This is an appeal from one of the criminal divisions of the circuit court of the city of St. Louis. The information authorizing the prosecution was in two counts under section 4770, Revised Statutes 1909; the first count charged defendant and one Sylvester Scharpiat with making and establishing "a policy" as a business and avocation, and the second count with aiding and assisting in making and establishing "a policy" as a business and avocation.

Crime of Policy.

As the sufficiency of the indictment is challenged, we set it forth in full, omitting the caption and signature: .

"H. A. Rosskopf, Assistant Circuit Attorney in and for the city of St. Louis, aforesaid, within and for the body of the city of St. Louis, on behalf of the State of Missouri, upon his official oath, information makes as follows:

"That Edward A. Hilton and Sylvester Scharpiat on the 19th day of May in the year of our Lord, one thousand nine hundred and ten, at the city of St. Louis aforesaid, unlawfully and feloniously did make and establish a 'policy' as a business and avocation in the State of Missouri, against the peace and dignity of the State.

"And H. A. Rosskopf, Assistant Circuit Attorney, in and for the city of St. Louis, as aforesaid, within and for the body of the city of St. Louis, on

behalf of the State of Missouri, upon his official oath aforesaid, further information makes as follows:

"That Edward A. Hilton and Sylvester Scharpiat, in the city of St. Louis, on the nineteenth day of May, 1910, unlawfully and feloniously did aid and assist in making and establishing a 'policy' as a business and avocation, in the State of Missouri, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State."

Defendants were arraigned and pleaded not guilty. A severance was granted to Scharpiat and the State elected to try the defendant Hilton first. There was a trial of defendant before a jury. At the close of all the testimony the State elected to proceed upon the second count of the information and the court withdrew from the consideration of the jury all matters relating to the first count. Thereupon defendant asked the court to give a peremptory instruction in the nature of a demurrer to the evidence, which was refused. Instructions were given (1) defining the offense and prescribing the punishment; (2) the weight to be given circumstantial evidence as affecting guilt; (3) the probative force of defendant's statements; (4) that defendant was a competent witness in his own behalf; (5) that the information was not to be considered as evidence; (6) the presumption of innocence; (7) defining a reasonable doubt; (8) that the jury were the sole judges of the credibility and weight to be given the testimony; and (9) that the verdict must be based on the evidence and not upon arguments of counsel.

After the arguments of counsel, the jury returned a verdict of guilty as charged in the second count of the information and assessed defendant's punishment at three years' imprisonment in the penitentiary.

Ineffectual motions for a new trial and in arrest were filed, and overruled, and an appeal was perfected to this court.

Judgment was rendered in accordance with the verdict.

Upon defendant's executing a bail bond approved by the trial court, a stay of execution was granted pending the appeal.

These facts are disclosed by the testimony:

On the 19th day of May, 1910, the date alleged in the information, three police officers named Wells, Stephenson and White, who had been detailed to look after gambling and were designated on the force as the "Gambling Squad," went to a room in the rear of a shoemaker's shop at 922 Sidney street in that city, in the discharge of their special duty. Wells and White went to a window of the rear room, and saw defendant and Scharpiat sitting at a table marking in policy books. Stephenson went through the shoemaker's shop and entering the rear room seized defendant with one hand and Scharpiat with the other, and pulled them away from the table, holding them until the other two officers ran around and entered the room, and defendant and Scharpiat were placed under arrest. Paraphernalia consisting of wall sheets, policy books with pencil markings on them, tickets and drawings were found on the table and in other parts of the room, and a small amount of money was lying on the table. All of these things were taken possession of by the officers.

Officer Wells says when he entered the room he recognized defendant, whom he had known for three years, and said to him: "This is pretty good, here you are again; I thought you had enough of this business;" to which defendant replied that "he was out of work and had to do something." Wells then inquired how long defendant had been at that business, and the latter replied: "I have only been doing it two or three months."

Officer Stephenson's statement as to this conversation is slightly different, but to the same effect.

Stephenson says Wells said to defendant: "Ed, you are at it again; you know you haven't been out of the workhouse very long." To which defendant replied: "I have been sick all winter and I have only been writing policy for about three months. I had to do something."

A somewhat more general account of the conversation is given by White, the other officer.

All of the officers state that when asked his residence, at the police station, defendant stated it was 922 Sidney street, that he was renting the room where he had been arrested.

Upon officers Wells and Stephenson being qualified as experts by showing their familiarity with "policy," the paraphernalia which had been seized in the room was produced in court and the officers each explained how such sheets, policy books, tickets and drawings were used in that character of game or lottery. Each testified that the books taken out of defendant's and Scharpiat's hands at the time of their arrest were policy books and that defendant at the time was making figures in such a book.

The burden of the testimony for the defense was to show that the room in which the defendant was found, was used for other purposes than as a policy shop; that it was headquarters for a number of persons in the neighborhood to engage in social games of cards and to meet and drink beer. It was also attempted to discredit the testimony of the officers in regard to their ability to see what defendant and Scharpiat were doing in the room as the officers stood at the window—witnesses for the defense testifying it was not possible to see through the lace curtain which hung over the window.

Defendant and Scharpiat directly contradicted the testimony of the officers as to officer Wells' conversation with defendant or as to any admission having

been made by the latter at the time of his arrest, or that he and Scharpiat were engaged in marking in policy books, and insisted that their meeting was a casual one and they knew nothing about the paraphernalia shown to have been found in the room, and were not marking in policy books, and were in no way connected with a policy game or lottery. The defendant had previously been convicted and had served a term in the workhouse for a like crime to that charged in the information.

Other testimony complained of by defendant will be discussed in its order in the opinion.

I. Defendant complains of the information, first, that it does not sufficiently apprise him of the nature and cause of the accusation, and second, that it does not afford a basis for a plea of *res adjudicata*.

**Information.**

A familiar rule of criminal pleading is that where a statute specifically defines an offense, an indictment or information thereunder is sufficient which properly follows the language of the statute. [Whar. Cr. Pl. & Pr. (9 Ed.), sec. 220.]

The information in this case was based on section 4770, Revised Statutes 1909, which declares it a felony to make or establish or aid or assist in the making or establishing of a policy as a business or avocation. The information followed the exact language of the statute. The word "policy" as used in the statute has a well-understood meaning as a method of gambling by betting on numbers to be used in a lottery; and it was unnecessary to define the word or allege the manner in which defendant aided or assisted in the making or establishing of the lottery. In conformity with the rule as applied to this particular case, this court has, in a number of well-considered cases, held indictments in the identical words here used, sufficient to apprise

**In Language of Statute.**

defendants of the nature and cause of the accusation and to authorize them to plead former convictions as a bar when prosecuted for the same offenses. [State v. Wilkerson, 170 Mo. 184, 192; State v. Cronin, 189 Mo. 663, 669; State v. Miller, 190 Mo. 449, 459.]

As an additional reason in support of defendant's first contention, he urges that the statute (section 4770, supra) is unconstitutional. As we Constitutional have shown, the statute clearly defined Statute. the offense and the information was drawn in conformity therewith. Defendant was, therefore, fully informed as to "the nature and cause of the accusation," and the provision of the Bill of Rights claimed to have been violated (Constitution, article 2, section 22) was fully complied with.

Further discussion, therefore, as to the sufficiency of the information and the validity of the statute on which it is based, will serve no useful purpose, as it would be but the threshing of old straw from which no grain of valid objection can be winnowed.

We, therefore, rule this point against the defendant.

II. The contention is made that the trial court erred in overruling a motion, made by defendant, to strike out the entire testimony of a witness Motion to for the State named Frank Brown. The Strike Out ground for this contention is that the witTestimony. ness had, over defendant's objection, testified to having made policy plays with and disposed of policy tickets for defendant before and after May 19th, the date alleged in the information. It is apparent from the record that the witness gave his testimony reluctantly, his answers to the simplest questions being oftentimes wholly irresponsive. Early in his examination the court ruled that his testimony as to transactions after May 19th be stricken out, and limited the State to proof of matters before that date.

This ruling clearly informed the jury that they were only to consider evidence of prior matters in the making up of their verdict; they could not have been misled by the testimony, and defendant was, therefore, not injured.

A motion to strike out should not be leveled at the entire testimony of a witness unless it is wholly inadmissible. After timely objections have proved ineffectual, it is not improper at the close of a witness's testimony to move to strike out the objectionable portions of same, so 'designating them that the court may be enabled to determine the extent and purpose of the motion and to rule intelligently thereon. This was not done here. The motion was too broad, and we rule this contention against the defendant. [State v. Skibiski, 245 Mo. 459; Pressley v. State, 111 Ala. 34; Snideman v. Snideman, 118 Ind. 162; People v. Stanley, 101 Mich. 93.]

III. The admission of the testimony of officer Wells in rebuttal is alleged as error. A careful examination of this testimony fails to disclose in what manner it could have proved prejudicial to the defendant. While mainly in regard to immaterial matters, it was offered to contradict testimony which had been introduced by the defendant, and he will not be heard to complain. [State v. Moss, 216 Mo. 436, 444; State v. Baldwin, 214 Mo. 290.]

Rebuttal.

IV. The giving of the first instruction is assigned as error; the ground therefor being that it is broader than the charge in the information and is, therefore, misleading; that it erroneously applies the law to the facts and is a comment upon the evidence and an argument to the jury.

Policy:
Instruction.

This contention seems formidable on its face, but its force is due to its phrasing and not to defects in the instruction. Similar instructions in all essential

features were given in prosecutions for like offenses in the cases cited under the first paragraph of this opinion and were approved by this court.

Defendant's specific objection is the use of the words "or scheme of lottery" after the word "policy" in one part of the instruction, and in the use of the words "or scheme of drawing in the nature of a lottery" after the word "policy" in another part of the instruction. The testimony clearly disclosed that "policy" was a scheme of lottery, as well as a scheme of drawing in the nature of a lottery, and the well-established meaning of the word in criminal law gives it no other signification. [State v. Harmon, 60 Mo. App. 48; State v. Wilkerson, 170 Mo. 184.] The words objected to were, therefore, nothing more than definitions and their use tended to enlighten rather than mislead the jury.

V. There was no error in the court instructing the jury that circumstantial evidence alone was sufficient to establish the making or establishing of the policy or scheme of drawing which defendant was charged with aiding and assisting, following this with the usual instruction in regard to the manner in which circumstantial evidence was to be considered. [State v. Williams, 44 Mo. App. 302.] A well-connected chain of circumstances showed the establishment of a policy or scheme of drawing and the instruction defining the probative force of circumstantial evidence was therefore not improper. Defendant's admission coupled with his possession of the instruments of the crime and his actual participation in an effort to aid and assist in same at the time of his arrest, afforded ample direct evidence to sustain the verdict.

Circumstantial Evidence.

VI. The defendant complains of the remarks of counsel for the State in his closing argument to the

**Remarks of Prosecutor.** jury in his saying: "I am prosecuting a crime which counsel for defendant, in his questions, has shown to be unusually prevalent in this city, a crime which can only be stamped out by an appropriate punishment of defendant, and even then it cannot always be stamped out, as the evidence in this case shows; the men who commit this kind of crime are so disregardful and unmindful of the laws of the State." And to the further remark by the prosecutor: "I submit, gentlemen, in regard to this curtain there is nò way that I could tell what the defense was going to be, that the curtain was old and dirty and that you could not see through it; and I had no idea yesterday that that was their defense in this case. I understood that the officers could see through that curtain or I would have made some effort to bring it into court."

The first remark was in effect an appeal for conviction on account of the prevalence of the crime charged.

While it is true as insisted by the defendant that "criminal cases should be determined by the evidence **Prevalence of Crime.** adduced and the law as defined in the instructions," where the prevalence of a crime is shown and there is other ample evidence of defendant's guilt, an appeal by the prosecutor to the jury for a conviction on account of such prevalence is not unauthorized. Such an appeal couched in far more objectionable words than in the case at bar was approved by this court in State v. Zumbunson, 86 Mo. 111. This case has been cited with approval in State v. Rasco, 239 Mo. 535, 581, where other cases of this court announcing a like rule will be found compiled.

The second remark complained of could not by reasonable construction have improperly influenced the jury. If the remark had any in-

**Excuse for Not Producing Curtain.** fluence it was in the defendant's favor rather than against him. Witnesses for defendant had testified that they could not see through the curtain; the failure of the State to bring the curtain into court authorized the presumption that it could not refute the testimony of these witnesses. However, the contention of the defendant in this regard is not worthy of serious consideration; there was ample evidence of the defendant's guilt, regardless of whether the curtain could be seen through or not; he was caught in the commission of the act charged, with the physical evidences of the crime in his hands and all around him. We, therefore, rule this contention against the defendant.

Finding no error in the record, the judgment is affirmed and the sentence which the law pronounces is ordered to be executed. *Brown, P. J.,* and *Faris, J.,* concur.