State v. Maurer.

## STATE OF MISSOURI, Respondent, v. JACOB MAURER, Appellant.

**St. Louis Court of Appeals, May 6, 1913.**

**FOOD: Sale of Imitation Butter: Sufficiency of Information.** An information charging that defendant unlawfully sold and offered for sale a substance designed to be used as a substitute for butter, to-wit. oleomargarine, was fatally defective for failure to charge that the substance was "imitation butter or made in the semblance of butter;" following State v. Shortell, ante. *Held*, by **REYNOLDS, P. J.,** dissenting, that inasmuch as oleo-margarine is an article "other than that produced from pure milk or cream from the same, made in sumblance of butter and designed to be used as a substitute for butter made from pure milk or cream from the same," it is "imitation butter," under Sec. 650, R. S. 1909, and hence the charge in the information that oleomargarine was sold "under the name and under the pretense that the same was butter," was sufficient to bring the offense within the statute.

Appeal from St. Louis Court of Criminal Correction. —*Hon. Benj. Klene*, Judge.

REVERSED AND REMANDED;

CAUSE CERTIFIED TO SUPREME COURT.

*Zachritz & Zachritz* for appellant.

The information charges no violation of law. In order to charge the offense under section 4835 the information should have alleged a sale, or offer of sale, of the imitation substitute for butter without packing the same in firkins, tubs or paper packages with the true name of said imitation substitute clearly and indelibly branded, marked or labeled thereon. It is fundamental that an indictment or information predicated upon the provisions of a statute must charge the offense in the language of the statute, and the allegation must be sufficient to fully inform the defendant of the nature and character of the offense he is called upon to answer on his trial. State v. Watson, 216 Mo. 420; State v. Gibbs, 129 Mo. App. 700; State v. Haney, 130 Mo. 95; State v. Lentz, 184 Mo. 223.

*Elliott W. Major,* Attorney-General, and *Campbell Cummings,* Assistant Attorney-General, and *John P. Leahy* for respondent.

ALLEN, J.—Defendant was convicted of selling a substance designed to be used as a substitute for butter, under the name of and under the pretense that the same was butter. The information charges that the defendant "in the city of St. Louis, on the 15th day of October, 1909, did, by a clerk, at No. 8 South Jefferson avenue, in said city, unlawfully sell and offer for sale a substance designed to be used as a substitute for butter, to-wit, oleomargarine," etc.

The prosecution is based upon section 657, Revised Statutes 1909, and the information does not

charge that the substance which it is alleged the defendant sold or offered to sell was "imitation butter," or made in the semblance of butter. In State v. Shortell, just decided, it was held by a majority of this court that an information in this form failed to charge an offense under the statute, and was insufficient to support a conviction. For the reasons there given the information here must be held to be fatally defective.

It is unnecessary to touch upon the other questions involved in the case. The judgment of the St. Louis Court of Criminal Correction should be reversed and the cause remanded. *Nortoni, J.,* concurs. *Reynolds, P. J.,* dissents in a separate opinion, and as he deems the decision rendered herein to be contrary to that of the Supreme Court in State v. Bockstruck, 136 Mo. 335, 38 S. W. 317, and in State v. Hilton, 248 Mo. 522, 154 S. W. 729, and to other decisions cited in his dissenting opinion, he asks that the cause be certified to the Supreme Court, which is accordingly done.

## DISSENTING OPINION.

REYNOLDS, P. J.—The assistant prosecuting attorney of the city of St. Louis, on the 22nd of October, 1909, filed an information in the court of criminal correction of that city, against the defendant, appellant here, in which it is charged that the defendant, in the city of St. Louis and on the 15th of October, 1909, "did, by a clerk, at No. 8 South Jefferson avenue in the city of St. Louis and State of Missouri, unlawfully sell and offer for sale, a substance designed to be used as a substitute for butter, to-wit, oleomargarine, under the name and under the pretense that the same was butter, contrary to the form of the statute," etc.

On trial before the court and a jury there was evidence on the part of the State tending to show that two or more witnesses called at the place of business of defendant mentioned in the information; that defendant himself was absent and had been absent from that place all that day; that they asked the clerk in charge for a pound of creamery butter and the clerk asked, ''What price?'' The witness said, ''Twenty-five cents,'' and the clerk took a substance from a firkin, weighed it and handed it to the witness, who paid twenty-five cents for it. The article so sold and delivered in obedience to this request for a pound of creamery butter appeared, on analysis, to be oleomargarine and not butter. Over the firkin from which it was taken was a sign, ''Wisconsin Creamery, 25 cents.'' Defendant undertook to show that ''Wisconsin Creamery,'' was a name understood by the trade and people generally to be a name for oleomargarine. On objection of the State this was excluded.

Defendant, testifying as a witness in his own behalf, stated, substantially, that he had eight stores, including the one in question; that he employed sixty or seventy clerks and salesmen, a number being employed in the store in question; that he was a licensed dealer in oleomargarine at that place, and had instructed his clerks, including the one mentioned as making the sale, not to sell oleomargarine as or for butter and to have all their papers stamped ''oleomargarine,'' and to sell oleomargarine for what it was; that as to the sale in question he was not present and had no knowledge of it and had never sanctioned it. Defendant further testified that his oleomargarine firkins or tubs were labeled ''oleomargarine,'' and that was on the government stamp on the side of the tub from whch the substance was taken.

At the close of plaintiff's testimony and again at the close of all the testimony, defendant interposed demurrers which were overruled.

At the close of the case defendant asked several instructions, all of which the court refused, plaintiff excepting.

One of these instructions was to the effect that if the clerk, whom it is alleged made this sale of the alleged substitute for butter, at the time he delivered it to the purchaser, placed upon the package in which it was contained or upon the wrapper thereof the word "oleomargarine," then defendant cannot be held to have sold the substance under the name of butter or under the pretense that it was butter.

The court of its own motion instructed the jury to the effect that if they found that defendant, by a clerk, at the time and place specified, sold a substance designed to be used as a substitute for butter, to-wit, oleomargarine, under the name of and under the pretense that it was butter, they should find defendant guilty as charged in the information; but if they did not so find, they should acquit defendant, also instructing the jury as to the punishment in case of a conviction.

The court further instructed the jury that if they believed from the evidence that the sale of a substance designed to be used as a substitute for butter "was made by a person in the employ of the defendant, and it has been proven to your satisfaction and beyond a reasonable doubt that such sale of said substitute was made by said employee, under the name of and under the pretense that the same was butter, such act would be the act of the defendant, unless you further find that such sale was made contrary to the orders of defendant; proof of this is upon the defendant, and if he shows this to be a fact you should acquit him."

Instructing the jury, in substance—and we here condense—that the information filed was no proof of

the charge; that the law presumes the defendant to be innocent and that that presumption continues until it has been overcome by evidence establishing his guilt to the satisfaction of the jury beyond a reasonable doubt; that the burthen of proving his guilt rests upon the State; that if they have a reasonable doubt they should acquit; properly defining "a reasonable doubt;" and that the previous good character of the defendant, if proved by the evidence, is a fact in the case which they should consider in passing upon his guilt or innocence, the law presuming that one whose character is good is less likely to commit a crime than one whose character is not good, the court instructed the jury, "but if all of the evidence, including that which has been given touching the previous good character of the defendant shows him to be guilty, then his previous good character cannot justify, excuse, palliate or mitigate the offense."

The court further instructed as to the credibility of the witnesses and that if the jury believed that any witness had knowingly sworn falsely to any material fact they were at liberty to reject all or any portion of that witness's testimony.

The jury returned a verdict against defendant, assessing his punishment at a fine of fifty dollars. Judgment followed accordingly and from this, defendant, interposing a motion for new trial as well as one in arrest, perfected his appeal to the Supreme Court.

The appeal was taken to the Supreme Court by defendant, on the ground that in the motion in arrest he had attacked the constitutionality of sections 4749, 4750 and 4751, Revised Statutes 1899.

On motion of the Attorney-General, the Supreme Court transferred the cause to this court, holding that the constitutional question had not been raised in due time and in proper manner in the trial court.

It will be noted that the prosecution was commenced ·before the Revised Statutes of 1909 took effect. [See section 8094, Revised Statutes 1909.] But section 4749, Revised Statutes 1899, on which the information is founded, now appears in the Revision of 1909 as section 657.

The points made in· argument before us by the learned counsel for the appellant are, that the information charges no violation of law; that the court should have sustained defendant's demurrer at the close of the State's case; that the evidence, including defendant's testimony, all shows that defendant was not present on the day of the sale; had no knowledge of what transpired; that the firkins containing oleomargarine were labeled as such; that he had a government license to sell oleomargarine; that he had not given consent to the sale by the clerk; on the contrary had instructed all of his clerks, including the one who made this sale, to sell oleomargarine for oleomargarine and butter for butter; that the court should have sustained the demurrer at the close of the whole case; that it erred in refusing the instructions tendered and in giving instructions of its own motion and that it should have sustained the motions for new trial and in arrest.

Learned counsel for appellant seem to have fallen into an error as to the section of the statute here involved. They state that the prosecution is founded on a violation of section 2276, Revised Statutes 1899, now section 4835, Revised Statutes 1909. The information is not founded on that section but on what was section 4749, Revised Statutes 1899, now section 657, which provides: "No person by himself or another, shall sell or offer for sale any substance designed to be used for a substitute for butter under the name of, or under the pretense that the same is, butter." The information, as will be observed, follows this section of the statute almost word for word,

save that when the law denounces the selling or offer-
ing for sale of "any substance designed to be used
for a substitute for butter, under the name of, or
under the pretense that the same is, butter," the
information charges the sale and offer for sale of "a
substance designed to be used as a substitute for
butter, to-wit, oleomargarine, under the name and
under the pretense that the same was butter."

Section 4744, Revised Statutes 1899, now section
650, Revised Statutes 1909, provides that "every
article, substitute or compound, other than that pro-
duced from pure milk, or cream from the same, made
in the semblance of butter and designed to be used
as a substitute for butter made from pure milk, or
cream from the same, is hereby declared to be imita-
tion butter," and it is declared in that section that
"imitation butter," as the words are used in the
following sections, including section 657, shall be so
construed. If the pleader, in drawing up this in-
formation had used the words "imitation butter" in
the information, so as to have charged that defendant
did "unlawfully sell or offer for sale, a substance
designed to be used for a substitute for butter, to-
wit, *imitation butter,* under the name and under the
pretense that the same was butter," there could be no
doubt that an offense would be charged. Instead of
using the words "imitation butter," the pleader used
the word "oleomargarine." Can there be any doubt
that this word "oleomargarine" as here used, followed
with the words that it was sold as butter, charges a
sale of imitation butter? We think not. Webster's
New International Dictionary (1910) defines oleomar-
garine to be a mixture of oleo-oil with neutral lard.
The Standard Dictionary defines it to be "artificial
butter; . . . the name by which the United States
government recognizes the product under the name
of oleomargarine." The Century Dictionary defines
oleomargarine to be, "a granular solid fat of a slightly

yellowish color, obtained from the leaf-fat or caul-fat of cattle.'' Evidently, then, oleomargarine is an article ''other than that produced from pure milk, or cream from the same, made in the semblance of butter and designed to be used as a substitute for butter made from pure milk or cream from the same,'' and when it is charged that it was sold ''under the name and under the pretense that the same was butter,'' it is sufficient to bring the offense within the statute. The chemist who testified in this case said that the substance identified as purchased at defendant's place of business had been analyzed by him and he found it to be oleomargarine and not butter. But it is hardly necessary to resort to lexicographers for definitions of this word. The common understanding is that it is imitation butter. Judge BROWN, in State v. Cummings, 248 Mo. 509, 154 S. W. 725, has very distinctly held that the courts are presumed to judicially know facts which are well known to all the people. It seems to me very clear that when an information charges, as this one does, that the defendant sold oleomargarine under the pretense that it was butter, he is distinctly charged with the offense designated by the statute and so clearly that he could not possibly be in any doubt as to the charge he was to meet. That is all that is required. When one asks for butter and oleomargarine is sold and delivered to him, the statute has been violated. This information distinctly so charges and it will not do for the defendant to say that he did not understand with what offense he stood charged. To do him and his counsel justice, it is fair to say that they make no such claim; in point of fact, the defense is that the defendant sold oleomargarine, as he himself testifies, as oleomargarine and butter as butter, and had instructed his clerks so to do.

Comparing this information with that which was approved in State v. Bockstruck, 136 Mo. 335, 38 S. W. 317, and construing oleomargarine to mean imitation

butter, as defined by section 650, I find no substantial
difference between the two informations, and think
that the information before us is good. I think that it
is further sustained as to form by the decision of our
Supreme Court in State v. Wilkerson, 170 Mo. 184,
l. c. 191 and 193, 70 S. W. 478, in State v. Edgen, 181
Mo. 582, l. c. 589, 80 S. W. 942, and in State v. Hilton,
248 Mo. 522, 154 S. W. 729.

I have set out the substance of the testimony
introduced on the part of the State, and think it was
sufficient to warrant submission of the case to the
jury. Hence I think there was no error in refusing
to sustain the demurrer offered at the close of the
testimony for the State.

While it is true that defendant was not present
at the time of this sale, it is in evidence that the sale
was made by a clerk in his employ and on the premises
of defendant. The statute reaches sales by the mer-
chant or by "another." The liability of the defend-
ant for the act of his clerk, under the provisons of
a like section of the statute, is established by our
Supreme Court in State v. Bockstruck, supra. There
Judge SHERWOOD, who delivered the opinion, says (l. c.
350): "The evidence already detailed was sufficient
to authorize a conviction of defendant under the
charge contained in the information; and the fact
that the sale in question was made by a young clerk·
of defendant, made out against defendant a prima facie
case, inasmuch as the sale occurred in defendant's
store, in apparently the ordinary course of business.
[State v. McCance, 110 Mo. 398.] If the sale was
made against the order of the owner, this was matter
of defense. [*Ibid.*; State v. Baker, 71 Mo. 475.]"

It will be noticed by the brief summary I have
made of the instructions given by the court of its own
motion, that the case was submitted to the jury in
entire harmony with this decision of our Supreme
Court.

This also disposes of the proposition that the court should have sustained a demurrer at the close of the whole case. The jury had before it the testimony of the witnesses for the plaintiff, showing the sale and the manner in which it was made; it had before it the testimony of the defendant as to his mode of conducting business and his instructions to his clerks and as to his marking of firkins containing substances other than butter as oleomargarine and it then became a question of fact for the determination of the jury as to which version they would accept, whether the testimony of the defendant, in connection with that given for the State, made out a defense. The jury, under proper instructions as to this very point, found otherwise. That verdict should be conclusive upon us. This disposes of the points as to error of the court in giving instructions.

The instructions asked by defendant were properly refused, either as not the law or because the propositions there asked were covered by the instructions given by the court of its own motion. One instruction, however, asked by defendant and of which we have given the substance, was not covered by the instructions given by the court of its own motion, and properly so, because there was no evidence in the case warranting it. For this reason it was properly refused.

I think the motions for new trial and in arrest were properly overruled.

Finding no reversible error in the cause the judgment of the court of criminal correction should be affirmed.

The foregoing, in the main, with slight changes in verbiage, was prepared as the opinion of the court. On submission of it and of the one prepared in State v. Surkamp, my brethren refused to follow my holding as to the sufficiency of the informations, the views of the majority being set out in an opinion

by my Brother ALLEN in State v. Shortell. I am unwilling to agree to this view and think the decisions of our Supreme Court in State v. Bockstruck, supra, and State v. Hilton, supra, as well as the other cases I have cited on this point, are directly contrary to the holding of my brethren here. In State v. Hilton, supra, Judge WALKER has said, passing on an information which was founded on a statutory offense—not on a common law one, "A familiar rule of criminal pleading is that, where a statute specifically defines an offense, an indictment or information thereunder is sufficient which properly follows the language of the statute."

It is admitted by my learned Brother ALLEN that these informations do follow the language of the particular section of the statute but fail to state facts required by the statute as a whole to constitute the offense, and he argues that these informations fail in this respect; that they follow the words of the particular section, disregarding the caption, and—not doing that—he holds them fatally defective. That is where I think the decision of our court in that case is wrong. To go into a description of the offense with too much particularity is sometimes as fatal as to be too brief. [See State v. Cummings, supra.]

In this present case there can be no pretense that the defendant was not advised of the offense with which he stood charged, to which, in brief, his defense was that he had not sold as and for butter, an imitation article, namely oleomargarine.

I therefore ask that this cause be certified and transferred to the Supreme Court.